JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

20-cv-1217

20   1217

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
ASAM, LLC

**DEFENDANTS**
Jing Pu, Robert Meulmeester, Nanjing Capital Management, LLC
1840 S Camac St Partners GP, LLC, et al.

**(b)** County of Residence of First Listed Plaintiff   Arlington, VA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Mercer Co., NJ
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Vladislav Tinovsky, Esquire
Five Neshaminy Interplex, Ste 205, Trevose, PA   19053
215-568-6860

Attorneys *(If Known)*
David Kraut, Esquire
Kraut Harris
5 Valley Square, Ste 120, Blue Bell, PA  19422 215-542-4900

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☒ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | Protection Act |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | Exchange |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 890 Other Statutory Actions |
| | Medical Malpractice | | Leave Act | | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 895 Freedom of Information |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | ☐ 899 Administrative Procedure |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | Act/Review or Appeal of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | Agency Decision |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | State Statutes |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1  Original
Proceeding

☒ 2  Removed from
State Court

☐ 3  Remanded from
Appellate Court

☐ 4  Reinstated or
Reopened

☐ 5  Transferred from
Another District
*(specify)*

☐ 6  Multidistrict
Litigation -
Transfer

☐ 8  Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 U.S.C. § 1964(c)
Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $
in excess of $50,000

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE   Hon. Cynthia Rufe

DOCKET NUMBER   16-0687 and 2:20-cv-00962-CMR

DATE   March 2, 2020

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE   MAR - 2 2020

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

20   1217

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 1401 North Rhodes Street, #505, Arlington, VA  22209

Address of Defendant: _____

Place of Accident, Incident or Transaction: Philadelphia, Pennsylvania

---

RELATED CASE, IF ANY: 16-0687       Hon. Cynthia Rufe       07/18/2017

Case Number: 20-962    Judge: Hon. Cynthia Rufe    Date Terminated: pending

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☑   No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: March 2, 2020    _____    Pa ID No 17637
                        *Must sign here*
                        *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.    Federal Question Cases:**

☐ 1.  Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2.  FELA
☐ 3.  Jones Act-Personal Injury
☐ 4.  Antitrust
☐ 5.  Patent
☐ 6.  Labor-Management Relations
☐ 7.  Civil Rights
☐ 8.  Habeas Corpus
☐ 9.  Securities Act(s) Cases
☐ 10. Social Security Review Cases
☑ 11. All other Federal Question Cases
      *(Please specify):*   RICO - 18 U.S.C. § 1964(c)

**B.    Diversity Jurisdiction Cases:**

☐ 1.  Insurance Contract and Other Contracts
☐ 2.  Airplane Personal Injury
☐ 3.  Assault, Defamation
☐ 4.  Marine Personal Injury
☐ 5.  Motor Vehicle Personal Injury
☐ 6.  Other Personal Injury *(Please specify):* _____
☐ 7.  Products Liability
☐ 8.  Products Liability – Asbestos
☐ 9.  All other Diversity Cases
      *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, David Kraut, counsel of record *or pro se plaintiff*, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: March 2, 2020    _____    Pa ID No 17637
                        *Sign here if applicable*
                        *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

MAR - 2 2020

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| ASAM, LLC | : | CIVIL ACTION |
| v. | : | |
| JING PU, ROBERT MEULMEESTER, NANJING | : | **20      1217** |
| CAPITAL MANAGEMENT, LLC, ET AL. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)  ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  (x)

| | | |
|---|---|---|
| March 2, 2020 | David Kraut, Esquire | |
| **Date** | **Attorney-at-law** | **Attorney for**  Robert Meulmeester |
| 215-542-4900 | 215-542-0199 | Dkraut@krautharris.com |
| | | **E-Mail Address** |

THIS CASE IS RELATED TO: *16 CV 687 +*
*20 cv 962*

CIVIL ACTION NO.
CRIMINAL NO.     *20 cv 1217*

ASSIGNED TO:     *Judge Rufe*

MAR - 2 2020





## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

------------------------------------------------------------------

ASAM, LLC
           Plaintiff,          :    NO.

v.                    :    20      1217

JING PU, ROBERT MEULMEESTER, NANJING  :
CAPITAL MANAGEMENT, LLC,
1840 S CAMAC ST PARTNERS GP LLC,  :
1326 N MASCHER ST PARTNERS GP LLC,  :
REVIVAL MANAGEMENT LLC,  :
PASSYUNK LOAN ACQ13 LLC,  :
EDGEWISE REALTY, LLC, and  :
JOHN/JANE/ENTITY DOE DEFENDANTS 1-10  :
        Defendants.  :

------------------------------------------------------------------

**FILED**

MAR 0 2 2020

KATE BARKMAN, Clerk
By_____Dep. Clerk

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332(a)(1) and 1441, Defendant, Robert Meulmeester

("Meulmeester"), hereby files this Notice of Removal of the above-captioned action from the

Court of Common Pleas of Philadelphia County, Pennsylvania, to the United States District

Court for the Eastern District of Pennsylvania. In further support of this Notice of Removal,

Meulmeester states as follows:

### BACKGROUND AND PROCEDURAL HISTORY

1.      On September 10, 2019, Plaintiff Asam, LLC ("Asam") commenced this action

by filing a praecipe to file a writ of summons against Jing Pu, Robert Meulmeester, Nanjing

Capital Management, LLC, 1840 S Camac St Partners GP LLC, 1326 N Mascher St Partners GP

LLC, Revival Management LLC, Passyunk Loan ACQ13 LLC, Edgewise Realty, LLC, in the

Court of Common Pleas of Philadelphia County, Pennsylvania, which was styled *Asam, LLC v.*

*Jing Pu, et al.,* No. 190901274. The Docket Sheet for this case is annexed hereto as Exhibit "A."

2.      On January 23, 2020, a Complaint was filed by Plaintiff.  A true and correct copy of the Complaint filed in Philadelphia County is attached hereto as Exhibit "B."

3.      The state court docket attached hereto as Exhibit "A" reflects all of the process, pleadings, and orders filed in this case to date subsequent to the Complaint.  Defendants have not answered, moved or otherwise responded to the Complaint.

4.      In the Complaint, Plaintiff asserts claims against Defendants for an alleged violation of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964(c) (Count IV) as well as a number of state law tort and contract claims.

## TIMELINESS OF REMOVAL

5.      Plaintiff filed its Complaint on January 23, 2020.

6.      Plaintiff served Meulmeester with a copy of the Complaint on February 21, 2020.

7.      Meulmeester has filed this Notice of Removal within thirty (30) days of the date Defendant Jing Pu received a copy of the Complaint.

8.      Thus, this notice is timely pursuant to 28 U.S.C. § 1446(b).

## CONSENT OF CO-DEFENDANTS TO REMOVAL

9.      Co-Defendants Jing Pu, Nanjing Capital Management, LLC, 1840 S Camac St Partners GP, LLC, 1326 N Mascher St Partners, GP, LLC, Revival Management LLC and Passyunk Loan ALQ13, LLC, which comprise all of the defendants which have been served with process, join in the consent to this removal.  *See* Exhibits "C" and "D" hereto.

10.     As all Defendants served with process consent to removal, removal is proper pursuant to 28 U.S.C. § 1446(b)(2)(A).

## GROUNDS FOR REMOVAL

11.     Meulmeester repeats and incorporates his allegations contained in Paragraphs 1 through 10 of this Notice of Removal as if fully set forth at length herein.

12.     The Complaint asserts a claim arising under the laws of the United States of America, namely the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964(c). *See* Exhibit "B" hereto at ¶¶ 84-96.

13.     Pursuant to 28 U.S.C. § 1441(c), the action is removable since this case includes a claim arising under the constitution laws or treaties of the United States and the remaining state law claims are within the supplemental jurisdiction of the District Court.  28 U.S.C. § 1441(c).

### REMOVAL TO THE EASTERN DISTRICT IS PROPER

14.     Under 28 U.S.C. § 1441(a), the United States District Court for the Eastern District of Pennsylvania is the proper venue for removal of jurisdiction because it embraces Philadelphia County, the place where this action remains pending.

### NOTICE TO STATE COURT AND PLAINTIFF

15.     The Notice of Removal is signed pursuant to Fed. R. Civ. P. 11.  *See* 28 U.S.C. § 1446(a).

16.     Counsel for Defendants certifies, pursuant to 28 U.S.C. § 1446(d), that copies of this Notice of Removal will be filed with the Court of Common Pleas of Philadelphia County, Pennsylvania, and served promptly upon counsel for Plaintiff.  A true and correct copy of Defendants' Notice of Filing of Notice of Removal (without exhibits) is attached hereto as Exhibit "E."

17.     By filing this Notice of Removal, Defendants do not waive any defenses that may be available to them, including, but not limited to, the right to contest *in personam* jurisdiction, incomplete process, improper service of process, arbitration, and/or improper venue, in this Court or in the court from which this action has been removed.

WHEREFORE, Defendants hereby remove the case now pending in the Court of

Common Pleas of Philadelphia County, Pennsylvania, No. 190901274, to the United States

District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1441.

Respectfully submitted,

**KRAUT HARRIS, P.C.**

BY: _____
David Kraut, Esquire
I.D. No. 17637
5 Valley Square
Suite 120
Blue Bell, PA  19422
215-542-4900
dkraut@krautharris.com

Dated:  March 2, 2020

-4-

## CERTIFICATE OF SERVICE

I, David Kraut, Esquire, hereby certify that a copy of Defendant Robert Meulmeester's

Notice of Removal was served upon the following:

Vladislav Tinovksy, Esquire
5 Neshaminy Interplex
Suite 205
Trevose, PA  19053
Attorneys for Plaintiff ASAM, LLC
*via email:  vtinovsky@tinovskylaw.com*

Blair H. Granger
David J. Scaggs, Esquire
The Granger Firm
1800 East Lancaster Avenue
Paoli, PA  19301
Attorneys for Jing Pu and Nanjing Capital Management, LLC
*via email: blair.granger@thegrangerfirm.com;  david.scaggs@thegrangerfirm.com*

Edgewise Realty LLC
708 North American Street
Philadelphia, PA  19123
*via U.S. First Class Mail*

Daniel S. Bernheim 3d, Esquire
Wilentz Goldman & Spitzer, P.A.
Two Penn Center, Suite 910
Philadelphia, PA  19102
via email: dbernheim@wilentz.com

**KRAUT HARRIS, P.C.**

Date: March 2, 2020

BY: _____
David Kraut, Esquire
Attorneys for Robert Meulmeester

# Exhibit "A"

(Notice of Removal)



No Items in Cart   **LOGOUT**   hkraut

Civil Docket Report

A $5 Convenience fee will be added to the transaction at checkout.

## Case Description

| | |
|---|---|
| **Case ID:** | 190901274 |
| **Case Caption:** | ASAM, LLC VS PU ETAL |
| **Filing Date:** | Tuesday , September 10th, 2019 |
| **Court:** | COMMERCE - COMPLEX, JURY |
| **Location:** | City Hall |
| **Jury:** | JURY |
| **Case Type:** | FRAUD |
| **Status:** | NOT OF REMOVAL TO US DIST CT |

## Related Cases

*No related cases were found.*

## Case Event Schedule

*No case events were found.*

## Case motions

*No case motions were found.*

## Case Parties

| Seq # | Assoc | Expn Date | Type | Name |
|---|---|---|---|---|
| 1 | | | ATTORNEY FOR PLAINTIFF | TINOVSKY, VLADISLAV |
| **Address:** | TINOVSKY LAW FIRM 5 NESHAMINY INTERPLEX SUITE 205 TREVOSE PA 19053 (215)568-6862 | **Aliases:** | *none* | |
| | | | | |
| 2 | 1 | | PLAINTIFF | ASAM, LLC |
| **Address:** | 1401 N RHODES ST ARLINGTON VA 22209 | **Aliases:** | *none* | |
| | | | | |
| 3 | | | DEFENDANT | PU, JING |
| **Address:** | 134 S BARROW PL | **Aliases:** | *none* | |

| | | | | PRINCETON NJ 08540 |
|---|---|---|---|---|

| 4 | | | DEFENDANT | MEULMEESTER, ROBERT |
|---|---|---|---|---|
| **Address:** | 1128 HALL ST PHILADELPHIA PA 19147 | **Aliases:** | *none* | |

| 5 | | | DEFENDANT | NANJING CAPITAL MANAGEMENT LLC |
|---|---|---|---|---|
| **Address:** | 134 S BARROW PL PRINCETON NJ 08540 | **Aliases:** | *none* | |

| 6 | | | DEFENDANT | 1840 S CAMAC ST PARTNERS GP, LLC |
|---|---|---|---|---|
| **Address:** | 230 S BROAD ST 17TH FLOOR PHILADELPHIA PA 19102 | **Aliases:** | *none* | |

| 7 | | | DEFENDANT | 1326 N MASCHER ST PARTNERS GP LLC |
|---|---|---|---|---|
| **Address:** | 230 S BROAD ST 17TH FLOOR PHILADELPHIA PA 19102 | **Aliases:** | *none* | |

| 8 | | | DEFENDANT | REVIVAL MANAGEMENT LLC |
|---|---|---|---|---|
| **Address:** | 230 S BROAD ST 17TH FLOOR PHILADELPHIA PA 19102 | **Aliases:** | *none* | |

| 9 | | | DEFENDANT | PASSYUNK LOAN ACQ13 LLC |
|---|---|---|---|---|
| **Address:** | CSC 2591 INTERSTATE DR SUITE 103 HARRISBURG PA 17110 | **Aliases:** | *none* | |

| 10 | | | TEAM LEADER | PADILLA, NINA W. |
|---|---|---|---|---|

| Address: | 360 CITY HALL PHILADELPHIA PA 19107 | Aliases: | *none* | |
|---|---|---|---|---|
| 11 | 1 | | ATTORNEY FOR PLAINTIFF | ZITEV, NIKITA PAVLOVICH |
| Address: | TINOVSKY LAW FIRM PC FIVE NESHAMINY INTERPLEX SUITE 205 TREVOSE PA 19053 (215)568-6880 | Aliases: | *none* | |
| 12 | | | DEFENDANT | EDGEWISE REALTY LLC |
| Address: | 708 N. AMERICAN STREET PHILADELPHIA PA 19123 | Aliases: | *none* | |
| 13 | | | ATTORNEY FOR DEFENDANT | BERNHEIM III 3D, DANIEL S |
| Address: | WILENTZ GOLDMAN & SPITZER PA TWO PENN CENTER PLAZA SUITE 910 PHILADELPHIA PA 19102 (215)636-4468 | Aliases: | *none* | |

## Docket Entries

| Filing Date/Time | Docket Type | Filing Party | Disposition Amount | Approval/ Entry Date |
|---|---|---|---|---|
| 10-SEP-2019 04:58 PM | ACTIVE CASE | | | 11-SEP-2019 11:41 AM |
| **Docket Entry:** | E-Filing Number: 1909021871 | | | |
| 10-SEP-2019 04:58 PM | COMMENCEMENT CIVIL ACTION JURY | TINOVSKY, VLADISLAV | | 11-SEP-2019 11:41 AM |
| **Documents:** | ✒ Click link(s) to preview/purchase the documents Final Cover | | 🛒 **Click HERE to purchase all documents** related to this one docket entry | |

| Docket Entry: | *none.* | | | |
|---|---|---|---|---|

| 10-SEP-2019 04:58 PM | PRAE TO ISSUE WRIT OF SUMMONS | TINOVSKY, VLADISLAV | | 11-SEP-2019 11:41 AM |
|---|---|---|---|---|
| **Documents:** | ⚲ Click link(s) to preview/purchase the documents<br>Asam v Pu Praecipe for Writ Summons (2019-09-10 EC).pdf<br>Asam v Pu Writ Summons (2019-09-10 EC).pdf<br>Commerce Addendum | | 🛒 **Click HERE to purchase all documents related to this one docket entry** | |
| **Docket Entry:** | PRAECIPE TO ISSUE WRIT OF SUMMONS FILED. WRIT OF SUMMONS ISSUED. | | | |

| 10-SEP-2019 04:58 PM | JURY TRIAL PERFECTED | TINOVSKY, VLADISLAV | | 11-SEP-2019 11:41 AM |
|---|---|---|---|---|
| **Docket Entry:** | 8 JURORS REQUESTED. | | | |

| 10-SEP-2019 04:58 PM | WAITING TO LIST CASE MGMT CONF | TINOVSKY, VLADISLAV | | 11-SEP-2019 11:41 AM |
|---|---|---|---|---|
| **Docket Entry:** | *none.* | | | |

| 11-OCT-2019 06:55 PM | PRAECIPE TO REISSUE SUMMONS | TINOVSKY, VLADISLAV | | 15-OCT-2019 09:06 AM |
|---|---|---|---|---|
| **Documents:** | ⚲ Click link(s) to preview/purchase the documents<br>Asam-v-Pu-Praecipe-Reissue-WritSummons-2019-10-11-EC.pdf<br>Asam v Pu Writ Summons (2019-09-10 ECF).pdf | | 🛒 **Click HERE to purchase all documents related to this one docket entry** | |
| **Docket Entry:** | PREACIPE TO REISSUE WRIT OF SUMMONS FILED. WRIT REISSUED. (FILED ON BEHALF OF ASAM, LLC) | | | |

| 06-NOV-2019 06:53 AM | AFFIDAVIT OF SERVICE FILED | TINOVSKY, VLADISLAV | | 06-NOV-2019 09:01 AM |
|---|---|---|---|---|
| **Documents:** | ⚲ Click link(s) to preview/purchase the documents<br>Asam-v-Pu-Aff-Service-J_Pu-2019-10-25.pdf | | 🛒 **Click HERE to purchase all documents related to this one docket entry** | |
| **Docket Entry:** | AFFIDAVIT OF SERVICE OF PLAINTIFF'S WRIT OF SUMMONS UPON JING PU BY PERSONAL SERVICE ON 10/25/2019 FILED. (FILED ON BEHALF OF ASAM, LLC) | | | |

| 06-NOV-2019 | AFFIDAVIT OF SERVICE | TINOVSKY, | | 06-NOV-2019 |
|---|---|---|---|---|

| 06:55 AM | FILED | VLADISLAV | | 09:02 AM |
|---|---|---|---|---|
| **Documents:** | ⚙ Click link(s) to preview/purchase the documents<br>Asam-v-Pu-Aff-Service-Nanjing-2019-10-25.pdf | | 🛒 **Click HERE to purchase all documents**<br>**related to this one docket entry** | |
| **Docket Entry:** | AFFIDAVIT OF SERVICE OF PLAINTIFF'S WRIT OF SUMMONS UPON NANJING CAPITAL MANAGEMENT LLC BY PERSONAL SERVICE ON 10/25/2019 FILED. (FILED ON BEHALF OF ASAM, LLC) | | | |
| | | | | |
| 08-NOV-2019<br>01:35 PM | LISTED FOR CASE MGMT CONF | | | 08-NOV-2019<br>01:35 PM |
| **Docket Entry:** | *none.* | | | |
| | | | | |
| 12-NOV-2019<br>12:30 AM | NOTICE GIVEN | | | 12-NOV-2019<br>12:30 AM |
| **Docket Entry:** | *none.* | | | |
| | | | | |
| 09-DEC-2019<br>09:30 AM | AFFIDAVIT OF SERVICE FILED | TINOVSKY, VLADISLAV | | 09-DEC-2019<br>09:35 AM |
| **Documents:** | ⚙ Click link(s) to preview/purchase the documents<br>Asam-v-Pu-Aff-Service-Mascher-GP-LLC-2019-11-07.pdf | | 🛒 **Click HERE to purchase all documents**<br>**related to this one docket entry** | |
| **Docket Entry:** | AFFIDAVIT OF SERVICE OF PLAINTIFF'S WRIT OF SUMMONS UPON 1326 N MASCHER ST PARTNERS GP LLC BY PERSONAL SERVICE ON 11/07/2019 FILED. (FILED ON BEHALF OF ASAM, LLC) | | | |
| | | | | |
| 09-DEC-2019<br>09:34 AM | AFFIDAVIT OF SERVICE FILED | TINOVSKY, VLADISLAV | | 09-DEC-2019<br>09:37 AM |
| **Documents:** | ⚙ Click link(s) to preview/purchase the documents<br>Asam-v-Pu-Aff-Service-Revival-2019-11-07.pdf | | 🛒 **Click HERE to purchase all documents**<br>**related to this one docket entry** | |
| **Docket Entry:** | AFFIDAVIT OF SERVICE OF PLAINTIFF'S WRIT OF SUMMONS UPON REVIVAL MANAGEMENT LLC BY PERSONAL SERVICE ON 11/07/2019 FILED. (FILED ON BEHALF OF ASAM, LLC) | | | |
| | | | | |
| 09-DEC-2019<br>09:38 AM | AFFIDAVIT OF SERVICE FILED | TINOVSKY, VLADISLAV | | 09-DEC-2019<br>09:42 AM |
| **Documents:** | ⚙ Click link(s) to preview/purchase the documents<br>Asam-v-Pu-Aff-Service-1840-Camac-GP-LLC-2019-11-07.pdf | | 🛒 **Click HERE to purchase all documents**<br>**related to this one docket entry** | |
| **Docket** | AFFIDAVIT OF SERVICE OF PLAINTIFF'S WRIT OF SUMMONS UPON 1840 S | | | |

| Entry: | CAMAC ST PARTNERS GP, LLC BY PERSONAL SERVICE ON 11/07/2019 FILED. (FILED ON BEHALF OF ASAM, LLC) |
|---|---|

| 09-DEC-2019 09:54 AM | PRAECIPE-AMEND PARTY NAME | TINOVSKY, VLADISLAV | | 09-DEC-2019 10:53 AM |
|---|---|---|---|---|
| **Documents:** | ✎ Click link(s) to preview/purchase the documents Asam-v-Pu-Praecipe to Amend Caption.2019-07-12-230p.pdf | | 🛒 **Click HERE to purchase all documents related to this one docket entry** | |
| **Docket Entry:** | PRAECIPE TO AMEND PARTY'S NAME. (FILED ON BEHALF OF ASAM, LLC) | | | |

| 13-DEC-2019 08:28 PM | PRAECIPE TO REISSUE SUMMONS | TINOVSKY, VLADISLAV | | 16-DEC-2019 08:57 AM |
|---|---|---|---|---|
| **Documents:** | ✎ Click link(s) to preview/purchase the documents Asam-v-Pu-Praecipe-Reissue-WritSummons.2019-12-13-EC.pdf Asam v Pu Writ Summons (2019-09-10 EC).pdf | | 🛒 **Click HERE to purchase all documents related to this one docket entry** | |
| **Docket Entry:** | PREACIPE TO REISSUE WRIT OF SUMMONS FILED. WRIT REISSUED. (FILED ON BEHALF OF ASAM, LLC) | | | |

| 18-DEC-2019 09:33 AM | CASE MGMT CONFERENCE COMPLETED | PADILLA, NINA W. | | 18-DEC-2019 09:33 AM |
|---|---|---|---|---|
| **Docket Entry:** | *none.* | | | |

| 18-DEC-2019 09:33 AM | CASE MANAGEMENT ORDER ISSUED | | | 18-DEC-2019 09:33 AM |
|---|---|---|---|---|
| **Documents:** | ✎ Click link(s) to preview/purchase the documents CMOIS_17.pdf | | 🛒 **Click HERE to purchase all documents related to this one docket entry** | |
| **Docket Entry:** | CASE MANAGEMENT ORDER, COMPLEX TRACK - IT IS ORDERED THAT: 1) THE CASE MANAGEMENT AND TIME STANDARDS ADOPTED FOR COMMERCE PROGRAM, COMPLEX TRACK CASES SHALL APPLY AND ARE INCORPORATED. 2) ALL DISCOVERY SHALL BE COMPLETED NOT LATER THAN 01-FEB-2021. 3) PLAINTIFF(S) SHALL IDENTIFY AND SUBMIT CURRICULUM VITAE AND EXPERT REPORTS FOR ALL EXPERT WITNESSES INTENDED TO TESTIFY AT TRIAL TO ALL OTHER PARTIES NOT LATER THAN 01-FEB-2021. 4) DEFENDANT(S) AND ANY ADDITIONAL DEFENDANT(S) SHALL INDENTIFY AND SUBMIT CURRICULUM VITAE AND EXPERT REPORTS FOR ALL EXPERT WITNESSES INTENDED TO TESTIFY AT TRIAL TO ALL OTHER PARTIES NOT LATER THAN 05-APR-2021. 5) ALL PRETRIAL MOTIONS (OTHER THAN MOTIONS IN LIMINE) SHALL BE FILED NOT LATER THAN 19-APR-2021. 6) A SETTLEMENT CONFERENCE MAY BE SCHEDULED ANY TIME AFTER 05-JUL-2021. 7) A PRETRIAL CONFERENCE MAY BE SCHEDULED ANY TIME AFTER 02-AUG-2021. 9) IT IS EXPECTED THAT THE CASE WILL BE READY | | | |

FOR TRIAL 06-SEP-2021, WHICH IS THE EARLIEST TRIAL DATE PURSUANT TO PA.R.C.P. 212.1 AND COUNSEL SHOULD ANTICIPATE TRIAL TO BEGIN EXPEDITIOUSLY THEREAFTER. ALL COUNSEL ARE UNDER A CONTINUING OBLIGATION AND ARE HEREBY ORDERED TO SERVE A COPY OF THIS ORDER UPON ALL UNREPRESENTED PARTIES AND UPON ALL COUNSEL ENTERING AN APPEARANCE SUBSEQUENT TO THE ENTRY OF THIS ORDER. ... BY THE COURT: NINA W. PADILLA, J. 18-DEC-2019

| 18-DEC-2019 09:33 AM | LISTED FOR SETTLEMENT CONF | | | 18-DEC-2019 09:33 AM |
|---|---|---|---|---|
| **Docket Entry:** | *none.* | | | |

| 18-DEC-2019 09:33 AM | LISTED FOR PRE-TRIAL CONF | | | 18-DEC-2019 09:33 AM |
|---|---|---|---|---|
| **Docket Entry:** | *none.* | | | |

| 18-DEC-2019 09:33 AM | LISTED FOR TRIAL | | | 18-DEC-2019 09:33 AM |
|---|---|---|---|---|
| **Docket Entry:** | *none.* | | | |

| 18-DEC-2019 09:33 AM | NOTICE GIVEN UNDER RULE 236 | | | 18-DEC-2019 11:13 AM |
|---|---|---|---|---|
| **Docket Entry:** | NOTICE GIVEN ON 18-DEC-2019 OF CASE MANAGEMENT ORDER ISSUED ENTERED ON 18-DEC-2019. | | | |

| 18-DEC-2019 01:40 PM | LISTED RULE RETURNABLE DATE | | | 18-DEC-2019 01:40 PM |
|---|---|---|---|---|
| **Docket Entry:** | *none.* | | | |

| 18-DEC-2019 01:40 PM | RULE TO SHOW CAUSE ENTERED | | | 18-DEC-2019 01:40 PM |
|---|---|---|---|---|
| **Documents:** | ⚙ Click link(s) to preview/purchase the documents CLRSC_23.pdf | 🛒 **Click HERE to purchase all documents related to this one docket entry** | | |
| **Docket Entry:** | The plaintiff is directed to timely prosecute the above captioned matter by filing a Complaint. A Rule is entered upon plaintiff to Show Cause why the matter should not be non prossed. The Rule is Returnable before the Commerce Program Team Leader on Friday, January 24, 2020, at 09:00 AM, in Courtroom 630 City Hall, | | | |

Philadelphia, Pennsylvania. All counsel must appear unless the case is settled or withdrawn, in which case counsel is directed to notify the court immediately in writing. If a complaint is filed and service effected prior to the Rule Returnable date, counsels' appearance will not be required and all deadlines imposed on the Case Management Order issued will govern this action. All counsel are under a continuing obligation and are hereby Ordered to serve a copy of the Case Management Order upon all unrepresented parties and upon all counsel entering an appearance subsequent to the entry of this Order. ...BY THE COURT: NINA W. PADILLA, J. 18-DEC-2019

| 18-DEC-2019 01:40 PM | NOTICE GIVEN UNDER RULE 236 | | | 18-DEC-2019 03:07 PM |
|---|---|---|---|---|
| **Docket Entry:** | NOTICE GIVEN ON 18-DEC-2019 OF RULE TO SHOW CAUSE ENTERED ENTERED ON 18-DEC-2019. | | | |

| 26-DEC-2019 08:35 AM | AFFIDAVIT OF SERVICE FILED | | | 26-DEC-2019 09:16 AM |
|---|---|---|---|---|
| **Documents:** | ✎ Click link(s) to preview/purchase the documents<br>169869.01.pdf | | 🛒 **Click HERE to purchase all documents related to this one docket entry** | |
| **Docket Entry:** | AFFIDAVIT OF SERVICE OF PLAINTIFF'S WRIT OF SUMMONS UPON JING PU BY PERSONAL SERVICE ON 12/18/2019 FILED. | | | |

| 07-JAN-2020 05:26 PM | ATTEMPTED SERVICE - NOT FOUND | | | 08-JAN-2020 09:27 AM |
|---|---|---|---|---|
| **Documents:** | ✎ Click link(s) to preview/purchase the documents<br>169869.02_AFFIDAVIT_20868B95-BA10-AE45-B6EE-EF5E05644EEF.pdf | | 🛒 **Click HERE to purchase all documents related to this one docket entry** | |
| **Docket Entry:** | ROBERT MEULMEESTER NOT FOUND ON 12/23/2019. | | | |

| 14-JAN-2020 11:33 AM | ENTRY OF APPEARANCE | ZITEV, NIKITA PAVLOVICH | | 14-JAN-2020 11:34 AM |
|---|---|---|---|---|
| **Documents:** | ✎ Click link(s) to preview/purchase the documents<br>Asam-v-Pu-Entry Of App 2020-01-14 EC NPZ.pdf | | 🛒 **Click HERE to purchase all documents related to this one docket entry** | |
| **Docket Entry:** | ENTRY OF APPEARANCE OF NIKITA PAVLOVICH ZITEV FILED. (FILED ON BEHALF OF ASAM, LLC) | | | |

| 23-JAN-2020 08:06 PM | COMPLAINT FILED NOTICE GIVEN | ZITEV, NIKITA PAVLOVICH | | 24-JAN-2020 09:23 AM |
|---|---|---|---|---|
| **Documents:** | ✎ Click link(s) to preview/purchase the documents<br>Asam-v-Pu-Complaint.2020-01-23-EC.pdf<br>Asam-v-Pu-Complaint-Atty-Verification.2020-01-23-EC.pdf | | 🛒 **Click HERE to purchase all documents related to this one docket entry** | |

| | | | | |
|---|---|---|---|---|
| | Asam-v-Pu-Complaint-COS-2020-01-23-EC.pdf<br>Asam-v-Pu-Complaint-Exhibit-A-2020-01-23-EC.PDF<br>Asam-v-Pu-Complaint-Exhibit-B-2020-01-23-EC.pdf<br>Asam-v-Pu-Complaint-Exhibit-C-2020-01-23-EC.pdf<br>Asam-v-Pu-Complaint-Notice-Defend-2020-01-23-EC.pdf | | | |
| **Docket Entry:** | COMPLAINT WITH NOTICE TO DEFEND WITHIN TWENTY (20) DAYS AFTER SERVICE IN ACCORDANCE WITH RULE 1018.1 FILED. (FILED ON BEHALF OF ASAM, LLC) | | | |
| | | | | |
| 23-JAN-2020<br>08:06 PM | JURY TRIAL PERFECTED | ZITEV, NIKITA PAVLOVICH | | 24-JAN-2020<br>09:23 AM |
| **Docket Entry:** | 8 JURORS REQUESTED. | | | |
| | | | | |
| 24-JAN-2020<br>09:45 AM | PRAECIPE-ATTACH VERIFICATION | ZITEV, NIKITA PAVLOVICH | | 24-JAN-2020<br>09:47 AM |
| **Documents:** | 🔍 Click link(s) to preview/purchase the documents<br>Asam-v-Pu-Praecipe-Substitute-Verification.2020-01-24-EC.pdf<br>Asam-v-Pu-Complaint-Client-Verification.2020-01-24-EC.pdf | 🛒 **Click HERE to purchase all documents related to this one docket entry** | | |
| **Docket Entry:** | PRAECIPE TO SUBSTITUTE/ATTACH VERIFICATION FILED. (FILED ON BEHALF OF ASAM, LLC) | | | |
| | | | | |
| 29-JAN-2020<br>12:38 PM | MOTION FOR ALTERNATIVE SERVICE | TINOVSKY, VLADISLAV | | 29-JAN-2020<br>04:28 PM |
| **Documents:** | 🔍 Click link(s) to preview/purchase the documents<br>Asam-v-Pu-Motion-Alt-Service-Filing-2020-01-29-EC.pdf<br>Motion CoverSheet Form | 🛒 **Click HERE to purchase all documents related to this one docket entry** | | |
| **Docket Entry:** | 61-20013861 MOTION FOR ALTERNATIVE SERVICE (FILED ON BEHALF OF ASAM, LLC) | | | |
| | | | | |
| 30-JAN-2020<br>02:47 PM | MOTION ASSIGNED | | | 30-JAN-2020<br>02:47 PM |
| **Docket Entry:** | 61-20013861 MOTION FOR ALTERNATIVE SERVICE ASSIGNED TO JUDGE: PADILLA, NINA W. . ON DATE: JANUARY 30, 2020 | | | |
| | | | | |
| 31-JAN-2020<br>10:27 AM | OTHER EVENT CANCELLED | | | 31-JAN-2020<br>10:27 AM |
| **Docket Entry:** | none. | | | |
| | | | | |
| 19-FEB-2020<br>10:48 AM | PRAECIPE TO SUPPL/ATTACH FILED | ZITEV, NIKITA PAVLOVICH | | 19-FEB-2020<br>03:24 PM |

| Documents: | ✂ Click link(s) to preview/purchase the documents<br>Asam v Pu Praecipe Supp Aff re Amended Cert of Good<br>Faith Investigation (2020-02-19 EC).pdf | 🛒 Click HERE to purchase all documents related to this one docket entry |
|---|---|---|
| Docket Entry: | 61-20013861 PRAECIPE TO SUPPLEMENT/ATTACH RE: MOTION FOR ALTERNATIVE SERVICE FILED. (FILED ON BEHALF OF ASAM, LLC) | |

| 21-FEB-2020<br>07:53 AM | ATTEMPTED SERVICE - NOT FOUND | TINOVSKY, VLADISLAV | | 21-FEB-2020<br>09:49 AM |
|---|---|---|---|---|
| Documents: | ✂ Click link(s) to preview/purchase the documents<br>Asam v Pu Aff-No-Service-re-RM 2019-11-03.pdf | | | 🛒 Click HERE to purchase all documents related to this one docket entry |
| Docket Entry: | ROBERT MEULMEESTER NOT FOUND ON 10/27/2019. (FILED ON BEHALF OF ASAM, LLC) | | | |

| 21-FEB-2020<br>11:27 AM | ATTEMPTED SERVICE - NOT FOUND | TINOVSKY, VLADISLAV | | 21-FEB-2020<br>11:29 AM |
|---|---|---|---|---|
| Documents: | ✂ Click link(s) to preview/purchase the documents<br>Asam v Pu Aff No Service - Edgewise Realty 2020-02-20.pdf | | | 🛒 Click HERE to purchase all documents related to this one docket entry |
| Docket Entry: | EDGEWISE REALTY LLC NOT FOUND ON 02/20/2020. (FILED ON BEHALF OF ASAM, LLC) | | | |

| 21-FEB-2020<br>02:48 PM | NOT OF REMOVAL TO US DIST CT | BERNHEIM III 3D, DANIEL S | | 21-FEB-2020<br>04:22 PM |
|---|---|---|---|---|
| Documents: | ✂ Click link(s) to preview/purchase the documents<br>ASAM.Notice of Filing of Notice of Removal.COS.Exh1.022120.pdf | | | 🛒 Click HERE to purchase all documents related to this one docket entry |
| Docket Entry: | NOTICE OF REMOVAL TO THE U.S. (EASTERN) DISTRICT COURT UNDER 20-CV-962. (FILED ON BEHALF OF PASSYUNK LOAN ACQ13 LLC, REVIVAL MANAGEMENT LLC, 1326 N MASCHER ST PARTNERS GP LLC AND 1840 S CAMAC ST PARTNERS GP, LLC) | | | |

| 26-FEB-2020<br>03:01 PM | RECORD MAILED/TRANSMITTED | | | 26-FEB-2020<br>12:00 AM |
|---|---|---|---|---|
| Docket Entry: | RECORD MAILED TO U.S. DISTRICT COURT. UPS# 1Z 5E3 003 03 1028 380 0. | | | |

# Exhibit "B"

(Notice of Removal)

**TINOVSKY LAW FIRM**
BY: Vladislav Tinovsky, Esquire
    Nik P. Zitev, Esquire
PA Bar Nos.: 85671 / 323195
Five Neshaminy Interplex
Suite 205
Trevose, PA 19053
215-568-6860
vtinovsky@tinovskylaw.com
nzitev@tinovskylaw.com
*Attorneys for Plaintiff*



Filed and Attested by the
Office of Judicial Records
23            pm

| | |
|---|---|
| ASAM, LLC,<br><br>                              Plaintiff,<br><br>           vs.<br><br>JING PU,<br>ROBERT MEULMEESTER,<br>NANJING CAPITAL MANAGEMENT, LLC,<br>1840 S CAMAC ST PARTNERS GP, LLC,<br>1326 N MASCHER ST PARTNERS GP LLC,<br>REVIVAL MANAGEMENT LLC,<br>PASSYUNK LOAN ACQ13 LLC,<br>EDGEWISE REALTY, LLC, and<br>JOHN / JANE / ENTITY DOE DEFENDANTS<br>1-10,<br><br>                              Defendants. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>CIVIL ACTION – LAW AND EQUITY<br>COMMERCE PROGRAM<br><br>SEPTEMBER TERM, 2019<br>NO. 001274<br><br>**JURY TRIAL IS DEMANDED** |

### NOTICE TO DEFEND

| NOTICE | AVISO |
|---|---|
| **You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money** | **Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la** |

1

Case ID: 190901274

claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

*You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.*

**Philadelphia Bar Association
Lawyer Referral
and Information Service
1101 Market St., 11th Floor
Philadelphia, Pennsylvania 19107
(215) 238-6333**

corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda.
Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

*Lleve esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.*

**Asociacion De Licenciados
De Filadelfia
Servicio De Referencia E
Informacion Legal
1101 Market St., 11th Piso
Filadelfia, Pennsylvania 19107
(215) 238-6333**

2

Case ID: 190901274

**TINOVSKY LAW FIRM**
BY:  Vladislav Tinovsky, Esquire
         Nik P. Zitev, Esquire
PA Bar Nos.: 85671 / 323195
Five Neshaminy Interplex
Suite 205
Trevose, PA 19053
215-568-6860
vtinovsky@tinovskylaw.com
nzitev@tinovskylaw.com
*Attorneys for Plaintiff*



THIS IS NOT AN ARBITRATION
CASE. ASSESSMENT OF DAMAGES
HEARING IS REQUIRED.
JURY TRIAL IS DEMANDED

| | |
|---|---|
| ASAM, LLC,<br><br>                          Plaintiff,<br><br>        vs.<br><br>JING PU,<br>ROBERT MEULMEESTER,<br>NANJING CAPITAL MANAGEMENT, LLC,<br>1840 S CAMAC ST PARTNERS GP, LLC,<br>1326 N MASCHER ST PARTNERS GP LLC,<br>REVIVAL MANAGEMENT LLC,<br>PASSYUNK LOAN ACQ13 LLC,<br>EDGEWISE REALTY, LLC, and<br>JOHN / JANE / ENTITY DOE<br>DEFENDANTS 1-10,<br><br>                          Defendants. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>CIVIL ACTION – LAW AND EQUITY<br>COMMERCE PROGRAM<br><br>SEPTEMBER TERM, 2019<br>NO. 001274<br><br>**JURY TRIAL IS DEMANDED** |

## COMPLAINT

Plaintiff, Asam, LLC, ("Plaintiff" or "Asam"), by and through its undersigned attorneys,

files this Complaint against Defendants, Jing Pu, Robert Meulmeester, Nanjing Capital

Management, LLC, 1840 S Camac St Partners GP, LLC, 1326 N Mascher St Partners GP LLC,

Revival Management LLC, Passyunk Loan Acq13 LLC, Edgewise Realty, LLC and John / Jane /

Entity Doe Defendants 1-10 (collectively, the "Defendants"). In support of this Complaint,

Plaintiff avers as follows:

I.        **NATURE OF THE ACTION**

1

1.      This is an action for, *inter alia,* fraud, breach of contract, civil RICO, conversion, unjust enrichment, civil conspiracy, piercing the entity veil, fraudulent misrepresentations, and negligent misrepresentations relating to Defendants' real estate scheme which caused harm and loss to Plaintiff, a limited partner in certain real estate project limited partnerships, as more fully described herein.

2.      By way of example and not limitation, Defendants misused the funds and assets of Plaintiff and/or the limited partnerships, and mismanaged the real estate projects, for their own personal gain and in contravention of their promises and legal duties to Plaintiff, which resulted in substantial harm and loss to the Plaintiff and the real estate projects, as more fully described herein.

## II.     THE PARTIES

3.      Plaintiff, Asam LLC, is a Virginia limited liability company with an address at 1401 N. Rhodes Street, # 505, Arlington, VA 22209.

4.      Upon information and belief, Defendant, Jing Pu ("Pu"), is an adult individual and citizen of the State of New Jersey with an address at 134 South Barrow Place, Princeton, NJ 08540 and/or 300 Alexander Court, Apt. 2002, Philadelphia, PA 19103.

5.      Upon information and belief, Defendant, Robert Meulmeester ("Meulmeester"), is an adult individual and citizen of the Commonwealth of Pennsylvania with an address at 1128 Hall Street, Philadelphia PA 19147.

6.      Upon information and belief, Defendant, Nanjing Capital Management, LLC ("Nanjing"), is a New Jersey limited liability company with an address at 134 South Barrow Place, Princeton, NJ 08540.  Upon information and belief, Defendant Nanjing is directly and/or indirectly owned, operated and/or controlled by Defendants Pu and/or Meulmeester.

7.      Upon information and belief, Defendant, 1840 S Camac St Partners GP, LLC

2

("Camac GP"), is a Pennsylvania limited liability company with an address at 230 South Broad Street, 17th Floor, Philadelphia, PA 19102. Upon information and belief, Defendant Camac GP is directly and/or indirectly owned, operated and/or controlled by Defendants Pu and/or Meulmeester.

8.    Upon information and belief, Defendant, 1326 N Mascher St Partners GP, LLC ("Mascher GP"), is a Pennsylvania limited liability company with an address at 230 South Broad Street, 17th Floor, Philadelphia, PA 19102. Upon information and belief, Defendant Mascher GP is directly and/or indirectly owned, operated and/or controlled by Defendants Pu and/or Meulmeester.

9.    Upon information and belief, Defendant, Revival Management LLC ("Revival"), is a Pennsylvania limited liability company with an address at 230 South Broad Street, 17th Floor, Philadelphia, PA 19102. Upon information and belief, Defendant Revival is directly and/or indirectly owned, operated and/or controlled by Defendants Pu and/or Meulmeester.

10.    Upon information and belief, Defendant, Passyunk Loan Acq13 LLC ("PLA"), is a Pennsylvania limited liability company with an address at Corporation Service Company, 2595 Interstate Drive, Suite 103, Harrisburg, PA 17110. Upon information and belief, Defendant PLA is directly and/or indirectly owned by, operated by, controlled by and/or affiliated with Defendants Pu and/or Meulmeester.

11.    Upon information and belief, Defendant, Edgewise Realty, LLC ("Edgewise"), is a Pennsylvania limited liability company with an address at 708 N. American Street, Philadelphia, PA 19123. Upon information and belief, Defendant Edgewise is directly and/or indirectly owned by, operated by, controlled by and/or affiliated with Defendants Pu and/or Meulmeester.

12.    Upon information and belief, the John /Jane / Entity Doe Defendants 1-10 are

Case ID: 190901274

person(s) or entity(es) unknown to Plaintiff at this time who are believed to be co-conspirators of the named defendants in this action which caused harm to, and are liable to, the Plaintiff as more fully described herein.

13.     Upon information and belief, one or more of the entity Defendants were mere alter-egos of the individual Defendants and were used by the individual Defendants as instrumentalities to perpetrate fraud and other unlawful conduct on Plaintiff and others, as more fully described herein. Accordingly, and for the other reasons set forth herein, the corporate veils of the entity Defendants should be pierced and all of the Defendants should be held jointly and severally liable to the Plaintiff in this action.

### III.    JURISDICTION AND VENUE

14.     42 Pa.C.S.A. §§ 5301 and 5322 authorize this Court to assert jurisdiction over: (a) each corporate Defendant by virtue of its formation under the laws of the Commonwealth of Pennsylvania and/or regular conduct of business in Philadelphia County, Pennsylvania; (b) each individual Defendant by virtue of his or her residence in the Commonwealth of Pennsylvania and/or regular conduct of business and other activities in Philadelphia County, Pennsylvania; and (c) causing harm or tortious injury to Plaintiff by an act or omission in this Commonwealth and/or by an act or omission outside this Commonwealth as more fully described herein, and committing violations within the jurisdiction of this Commonwealth of any statute, home rule charter, local ordinance or resolution, or rule or regulation promulgated thereunder by any government unit or of any order of court or other government unit, including, without limitation, the violations of statute and law described elsewhere in this Complaint.

15.     Venue is proper in this Court pursuant to Pennsylvania Rules of Civil Procedure 1006(a) and 2179(a) because the causes of action set forth herein arose, and the transactions and

occurrences out of which the causes of action set forth herein arose took place in Philadelphia County, Pennsylvania.

## IV.   BACKGROUND

### A.   Fraudulent Inducement by Defendants

16.    Defendants and/or their co-conspirators perpetrated a scheme to defraud Asam in connection with residential real estate projects involving 1840 S. Camac Street and 1326 N. Mascher Street in Philadelphia, Pennsylvania.[1]

17.    Defendants and/or their co-conspirators induced Asam to invest in such real estate scheme and become a limited partner in two Pennsylvania limited partnerships known as 1840 S Camac St Partners LP ("Camac LP") and 1326 N Mascher St Partners LP ("Mascher LP"). Defendants Pu and Meulmeester and/or their affiliates would act as general partners and developers of these real estate projects.

18.    Defendants induced Asam to invest in such limited partnership structure based on their false and misleading statements, actions and/or omissions.

19.    Defendants misrepresented to Asam that its initial capital contributions along with the Defendants' initial capital contributions were sufficient funding for the Defendants to secure additional loans and complete the projects on favorable terms with substantial profits to Asam. For instance, Defendants represented that Asam would earn profits of around or in excess of 300% for the Camac Street project and around or in excess of 40% for the Mascher Street project.

20.    Defendants also misrepresented to Asam that they were able to secure the necessary third-party financing beyond the initial capital contributions and successfully complete the projects, when in fact the Defendants knew all the while that they would seek additional funds

---

[1]     Such projects are collectively referred to herein as the "Asam projects."

5

from Asam to fund the losing projects while Defendants unjustly enrich themselves at the expense of Asam and the limited partnerships.

21.    Defendants also made false and misleading promises and statements to Asam in order to make Asam believe that the Defendants had extensive experience in developing successful real estate projects and were capable of successfully developing the Asam projects. However, Defendants true intentions were to conceal their plan, pattern and practice of scamming investors like Asam in real estate schemes like the one more fully described herein.

22.    Defendants also concealed the fact that they were involved in multiple real estate disputes and litigations accusing them of misconduct and/or unlawful conduct including real estate related fraud. This information was relevant to Asam's investment decision, but was concealed from Asam by Defendants.

23.    Defendants also mislead Asam into believing that certain attorneys involved with real estate projects were representing and/or protecting the interests of Asam in the negotiation of the Partnership Agreements (as defined below) and investment, when in fact such attorneys were actually representing the Defendants and Defendants' interests to the ultimate detriment of Asam (and have been on Defendants' payroll for a long time).

24.    Unbeknownst at the time to Asam, these attorneys were currently or had recently defended Defendants against claims of real estate fraud and/or misconduct, but this information was actively concealed from Asam so it could not properly evaluate the risks of the Asam projects.[2]

---

[2]    Upon information and belief, the Defendants continued to use these attorneys to represent the Asam project limited partnerships as well as other entities and interests detrimental to Asam and the Asam projects, and misused Asam project funds to pay unrelated or inappropriate legal fees and expenses to such attorneys in violation of Sections 6, 16 and/or other applicable provisions of the Partnership Agreements and applicable law.

6

25.     During the negotiations and review of the Partnership Agreements, Defendants Pu and Meulmeester, along with others, induced Asam into agreeing for the Camac LP to pay the general partner certain sums relating to the acquisition of land and other sums as a percentage of construction and related payments to develop the land. Asam agreed to this compensation structure based on the misrepresentations made by the Defendants that the projects would be successful and that the sale and/or leasing proceeds of the project would be sufficient to cover all of such payments to the general partner as well as provide the promised return of capital and profits to Asam as limited partner. However, these misrepresentations were knowingly false, and Defendants knew but concealed that fact from Asam.

26.     Based on these knowingly false and misleading statements, actions and/or omissions of the Defendants and their co-conspirators, Asam entered into these real estate investments and executed the related partnership agreements. The current version of the Camac Street partnership agreement (i.e. the 1840 S Camac St LP New Partnership Agreement dated as of January 12, 2017) is attached hereto as Exhibit A ("Camac Partnership Agreement"). The current version of the Mascher Street partnership agreement (i.e. the 1326 N Mascher St LP Partnership Agreement dated as of December 18, 2015) is attached hereto as Exhibit B ("Mascher Partnership Agreement"; and together with the Camac Partnership Agreement, the "Partnership Agreements").

**B.    Defendants' Mismanagement and Self-Dealing**

27.     Upon information and belief, during the course of the Asam projects, Defendants Pu, Meulmeester and/or others engaged in self-dealing and other unlawful conduct detrimental to Asam and the limited partnerships.

7

28.     Upon information and belief, Defendants caused the limited partnerships to distribute unlawful compensation and funds to them and their affiliates in violation of their promises to Asam, the Partnership Agreements and/or applicable law.

29.     Upon information and belief, Defendants engaged in grossly negligent, reckless and/or intentional misconduct in the hiring and payment of third-party contractors and others.

30.     Upon information and belief, Defendants solicited and accepted bribes, kickbacks, and/or other benefits from contractors and others hired to work on the projects, all to the detriment of the limited partnerships and Asam.

31.     Upon information and belief, Defendants did not pay contractors who were hired to provide work on the projects.

32.     Upon information and belief, Defendants caused the limited partnerships to overpay third parties for loans, goods and/or services, and knew that it would result in direct and/or indirect benefits to Defendants at the expense of Asam and the limited partnerships.

33.     Defendants concealed these unscrupulous self-dealing relationships from Asam in violation of the Partnership Agreements and applicable law.

34.     Upon information and belief, Defendants knew or should have known that these real estate projects would result in losses to Asam, yet these Defendants continued to make financial demands from Asam to invest additional funds based on knowingly false promises, statements and information.

35.     Defendants mismanaged and undercapitalized the real estate projects in violation of their duties and obligations under the Partnership Agreements and applicable law.

36.     Defendants failed to adequately supervise or manage the projects, resulting in poor work, additional expense to correct the poor work, and other waste of limited partnerships'

resources. Upon information and belief, the Defendants welcomed such waste as an opportunity to secure and convert additional funds from Asam through their fraudulent scheme more fully described herein.

37.    Defendants allowed litigations to be commenced against the limited partnerships and the partners due to their mismanagement and other unlawful conduct including, without limitation, their failure to secure the necessary and appropriate insurance coverages to cover losses associated with such litigations. This needlessly increased legal expenses for the Asam project limited partnerships, which in turn enriched the attorneys loyal to the Defendants.

38.    Defendants allowed liens to accumulate on the project properties, which resulted in enforcement proceedings, costs, expenses and harm to the Asam projects and Asam's hopes of a return on its investment, further highlighting Defendants' gross negligence, recklessness and/or intentional misconduct and mismanagement.

39.    Upon information and belief, Defendants failed to keep organizational formalities and proper recordkeeping in violation of the Partnership Agreements.

40.    Upon information and belief, Defendants comingled their unrelated personal expenses with those of the limited partnerships in order to conceal payments to their creditors from Asam project funds.

41.    Defendants misrepresented to Asam that they were able to manage these real estate projects in a successful manner when in fact they were not.

42.    Defendants continuously pressured Asam to invest additional funds beyond its required capital contributions based on intentionally false and misleading representations as to why the funds were needed and/or based on threats that Asam would lose its investment and never generate the profits it was promised if it did not do so. However, the Defendants knew all the while

9

that they were overspending on the projects and that the projected revenues therefrom would never be sufficient to yield Asam the promised return on its investment.

43.     Upon information and belief, Defendants used Asam's funds to pay off creditors and investors on other projects in which Asam was not involved in violation of Sections 6, 16 and other applicable provisions of the Partnership Agreements and applicable law.

44.     Upon information and belief, Defendants took money from the Asam projects to pay for deposits, extension fees, legal fees, architectural fees and other sums for projects having no connection at all to Asam.

45.     Upon information and belief, Defendants made direct withdrawals from the limited partnership bank accounts associated with the Asam projects and transferred those funds to their own personal accounts and/or those that benefited directly or indirectly the Defendants, their affiliates and/or their co-conspirators.

46.     Such conduct violates the Partnership Agreements and applicable law.

C.     **Asam Discovers Defendants' Misconduct and Their Scheme to Squeeze Out Asam**

47.     Asam repeatedly attempted to acquire true and correct information from the Defendants about the status of the Asam projects, but the Defendants and their co-conspirators continued to provide false and misleading information to Asam that the projects were moving forward without substantial issues when, in fact, all the signs indicated that the projects would result in financial losses to Asam as a limited partner.

48.     In 2018, after selling all of the units with respect to the Mascher Street project, and to Asam's surprise, Defendants Pu and Meulmeester declared that the project was a failure and that Asam had lost hundreds of thousands of dollars, rather than earning hundreds of thousands of dollar in profits promised by Defendants.

10

49.     Asam attempted to discover why it was not informed earlier of the projected losses on the Mascher Street project, but the Defendants continued to provide false and misleading statements to conceal their misconduct.

50.     In late 2018, Asam physically inspected portions of the Camac Street project to which it had access, and such inspection revealed that Defendants were knowingly concealing the true dilapidated and distressed condition of this project.

51.     However, Defendants continued to make false and misleading statements to Asam in order to cover their misconduct and seek additional funds from Asam to which they were not entitled.

52.     During this time, Defendants promised Asam that they would convey their profits and equity in the Camac Street project as an attempt to make up the financial losses Asam suffered in the Mascher Street project. Defendants continued to make similar false and misleading statements in order to delay Asam's exercise of its legal rights and remedies, all the while knowing that they would ultimately never convey such profits and equity interest to Asam.

53.     Instead, Defendant Pu and the other Defendants began to conspire to squeeze Asam out of the Camac Street project for their own personal benefit and to the detriment of Asam and Camac limited partnership.

54.     As part of this scheme, Defendants Pu and Meulmeester, along with other co-conspirators, conspired to surreptitiously acquire rights in a defaulted loan owed by the Camac limited partnership to Metro Bank (the "Metro Bank Loan"), which was secured by the assets of the Camac Street project and personal guarantees of Asam, Defendants Pu, Meulmeester and others.

55.     Initially, Defendants induced Asam to personally guarantee this loan on the false

11

and misleading statements that the Camac Street project would not fail.

56.     Now, however, the Defendants intended to surreptitiously acquire rights to the defaulted loan through a third-party entity at a discount, of which neither Asam nor the Camac limited partnership was a part, in order to foreclose on such loan and the Camac Street project to the detriment of the Camac limited partnership and Asam, but to the secret benefit of the Defendants who would not actually be liable under their own personal guarantees.

57.     Upon information and belief, Defendants audaciously negotiated, and used legal counsel for Asam and the Camac limited partnership, to form the surreptitious structure to acquire the rights to the Metro Bank Loan.

58.     Upon information and belief, one or more of the Defendants successfully acquired rights to the Metro Bank Loan in violation of their legal duties and obligations to Asam and the Camac limited partnership.

59.     Upon information and belief, Defendants have imminent plans to cause the Defendant Metro Bank Loan holder to foreclose on the Camac project to the detriment of Asam and the Camac limited partnership.

60.     Upon information and belief, Defendants' scheme to squeeze out Asam is imminent and requires immediate legal and/or equitable relief to prevent injustice to Asam and the Camac limited partnership.

61.     Upon information and belief, Defendants made false and misleading statements, and presented false and misleading documents, to Plaintiff in order to delay enforcement of Plaintiff's rights relating to these limited partnerships and its investment therein, all to the detriment of the Plaintiff.

62.     On or about August 9, 2019, Asam made demand for inspection of the Camac and

12

Mascher limited partnership books and records. Defendants, however, refused to allow Asam access or provide copies of all the requested records and information in violation of, *inter alia*, Sections 13.2 and 13.3 of the Partnership Agreements and applicable law. True and correct copies of the aforementioned inspection demands are attached hereto as <u>Exhibit C</u>.

63.     Defendants' conduct is unlawful, willful, wanton and reckless, and is punishable by punitive damages and treble damages under applicable law.

64.     Section 6.11 of the Partnership Agreements authorizes the recovery of Plaintiff's attorneys' fees and costs in this action.

65.     To date, Asam estimates that Defendants' unlawful conduct has caused it harm and loss in excess of $1,000,000.

**COUNT I**
**FRAUD**
**(Plaintiff v. Defendants)**

66.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if set forth fully herein.

67.     In furtherance of their unlawful and fraudulent scheme as more fully set forth above, *inter alia*, the Defendants made numerous misrepresentations and omissions to the Plaintiff including, without limitation, by:

      a.     deceiving the Plaintiff into believing that the proceeds of its investment would be used for profitable real estate investments with reputable developers and with a low risk of loss; and

      b.     misrepresenting and overstating the Defendants' financial condition and successful similar prior investments and deceiving Plaintiff about the assets, liabilities, reputation and creditworthiness of Defendants;

13

    c.    misrepresenting and overstating the Defendants' history of financial success in other similar real estate projects in order to create false expectations regarding the merits and risks associated with the Asam projects;

    d.    concealing the Defendants' intention to embezzle, siphon, divert and convert the Asam projects funds and benefits for their personal benefit and/or for purposes not authorized by the Plaintiff or Partnership Agreements;

    e.    concealing the Defendants' dire financial condition and Defendants' inability and/or unwillingness to repay the investment and other indebtedness of Defendants as it comes due.

68.    Plaintiff believes and, therefore, avers that the aforesaid misrepresentations and omissions were material, false and knowingly and intentionally made by the Defendants to the Plaintiff.

69.    Plaintiff believes and, therefore, avers that at the time of the misrepresentations and omissions, the Defendants knew, or recklessly disregarded the fact, that these misrepresentations and omissions would mislead Plaintiff, and that Plaintiff would act in reliance upon them.

70.    Plaintiff reasonably relied upon these material misrepresentations and omissions, as more fully set forth above.

71.    As a direct and proximate result of such reliance, Plaintiff has been damaged.

WHEREFORE, Plaintiff demands judgment in its favor and against the Defendants, jointly and severally, in the amount in excess of $50,000, plus punitive damages, costs, interest, attorneys' fees, and such other relief as the Court deems equitable, just and proper.

## COUNT II
## BREACH OF CONTRACT

14

Case ID: 190901274

**(Plaintiff v. Camac GP and Mascher GP)**

72.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if set forth fully herein.

73.     Section 16.1(iv) of the Partnership Agreements states, in relevant part, that the partnership(s) shall not and will not

> *"fail to observe all organizational formalities,* or fail to preserve its existence as an entity duly organized, validly existing and in good standing (if applicable) under the applicable Legal Requirements of the jurisdiction of its organization or formation, or amend, modify, terminate or fail to comply with the provisions of its organizational documents."

74.     Section 16.1(vi) of the Partnership Agreements further states, in relevant part, that the partnership(s) shall not and will not *"commingle its assets with the assets of any other Person, or permit any Affiliate or constituent party independent access to its bank accounts."*

75.     Section 16.1(x) of the Partnership Agreements further states, in relevant part, that the partnership(s) shall not and will not *"maintain its assets in such a manner that it will be costly or difficult to segregate, ascertain or identify its individual assets from those of any other Person."*

76.     Section 16.1(xv) of the Partnership Agreements further states, in relevant part, that the partnership(s) shall not and will not *"fail to maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations."*

77.     Defendants' conduct constitutes a breach(es) of the foregoing provisions of the Partnership Agreements, but is not limited to them, and the verbal promises made by one or more of the Defendants to Plaintiff.

78.     The actions and/or omissions of the Defendants Camac GP and Mascher GP further

15

constitute willful misconduct, gross negligence, fraud and/or intentional violations of the Partnership Agreements and are thus actionable pursuant to, *inter alia*, Section 6.11 and other applicable provisions of the Partnership Agreements.

79.   The Defendants are continuing to violate their contractual and other obligations to the Plaintiff.

80.   As a consequence of the foregoing, Plaintiff has sustained actual loss and injury including but not limited to, loss of their investment, which constitutes breach of the investment documents.

WHEREFORE, Plaintiff demands judgment in its favor and against the Defendants, jointly and severally, (a) in the amount in excess of $50,000.00, plus punitive damages, costs, interest, attorneys' fees and such other relief as the Court deems equitable, just and proper; and/or (b) for specific performance of the relevant terms of the investment contracts.

## COUNT III
## CONTRACTUAL INDEMNIFICATION
### (Plaintiff v. Camac GP and Mascher GP)

81.   Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if set forth fully herein.

82.   Section 6.11 of the Partnership Agreements states, in relevant part, that:

> Except as set forth in Section 5.3 hereof, no Partner shall be liable, responsible or accountable in damages or otherwise to the Partnership or to any other Partner for any act or failure to act by it, *unless such act or failure to act is attributable to willful misconduct, gross negligence, fraud or an intentional violation of any term of this Agreement, in which case such Partner shall indemnify and hold harmless the Partnership and each other Partner from any loss, damage, liability, cost or expense (including reasonable attorneys' fees and expenses) arising from such act or failure to act.*

83.   As more fully described herein, the general partner Defendants have acted and/or

16

failed to act in a manner constituting willful misconduct, gross negligence, fraud and/or intentional violation of the Partnership Agreements, which has harmed Plaintiff and entitles it to indemnification under the Partnership Agreements.

WHEREFORE, Plaintiff demands judgment in its favor and against the Defendants, jointly and severally, (a) in the amount in excess of $50,000.00, plus punitive damages, costs, interest, attorneys' fees and such other relief as the Court deems equitable, just and proper; and/or (b) for specific performance of the relevant terms of the investment contracts.

## COUNT IV
### VIOLATION OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. §1962(c) ("RICO")
### (Plaintiff v. Defendants)

84.   Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if set forth fully herein.

85.   18 U.S.C. § 1962(c) states that it "shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity…"

86.   Each of the Defendants is a "person" within the meaning of 18 U.S.C. § 1961(3).

87.   18 U.S.C. § 1964(c) creates a private right of action for violation of the RICO statute.

88.   As more fully described herein, the Defendants violated 18 U.S.C. § 1343 by, *inter alia*, devising or intending to devise a scheme or artifice to defraud, or to obtain money or property by means of false or fraudulent pretenses, representations or promises, and the Defendants knowingly caused to be transmitted by means of wire communications in interstate commerce, writings, signs, and signals for the purpose of executing the scheme or artifice, or attempting to do

17

Case ID: 190901274

so. The aforementioned fraud was conducted through, *inter alia*, communications by wire for purposes of 18 U.S.C. § 1343, and the Plaintiff and their related persons reasonably relied on such fraudulent and deceptive communications initiated by the Defendants.

89.    As more fully described herein, the Defendants violated 18 U.S.C. § 1344 by, *inter alia*, devising or intending to devise a scheme or artifice to defraud a financial institution, or to obtain the money and funds under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises.

90.    Defendants scheme involved numerous false and misleading statements, and/or omitted to state material facts when required, in order to fraudulently induce the Plaintiff and other unsuspecting investors into loaning them money at extremely high interest rates set by Defendants, and by defrauding financial institutions in connection with this unlawful conduct, all in an effort to convert funds of Plaintiff held in financial institution(s) for their own personal benefit and with full knowledge that Defendants could not and would not repay such funds.

91.    Defendants are engaged in interstate commerce as a result of their operation of their unlawful business and scheme, and their solicitation of investment into such business nationwide, including, without limitation, in the Commonwealth of Pennsylvania.

92.    Defendants have committed numerous predicate acts for violation of the RICO statute, including wire and bank fraud, as more fully described herein.

93.    The facts demonstrate that Defendants unlawfully, willingly, knowingly and/or with reckless disregard performed acts and/or omissions, and conducted or participated in the conduct, directly or indirectly, of the business and affairs of real estate development, management and investment through a pattern of racketeering activity, as more fully described above.

94.    Defendants, in their pattern of racketeering activity, regularly used interstate

18

telephone and facsimile transmission lines, cellular phones, and Internet transmissions, while engaging in interstate commerce for the purpose of committing wire, investment, bank and other fraud and/or deceit, and conspiring to commit wire, investment, bank and other fraud and/or deceit, as described more fully herein and actionable under the RICO statute.

95.     The pattern of racketeering activity for which the Plaintiff seeks legal recourse involves multiple related predicate acts over the course of several years, all constituting wire fraud, bank fraud and other actionable conduct defined by 18 U.S.C. §§ 1343 and 1344, which directly caused financial harm to the Plaintiff.

96.     As a direct and proximate result of the aforementioned RICO conduct, the Plaintiff has suffered substantial damages.

WHEREFORE, Plaintiff demands judgment in its favor and against the Defendants, jointly and severally, in the amount in excess of $50,000.00, plus treble damages under 18 U.S.C. §1964, punitive damages, costs, interest, attorneys' fees and such other relief as the Court deems equitable, just and proper.

## COUNT V
## CONVERSION
### (Plaintiff v. Defendants)

97.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if set forth fully herein.

98.     As described above, Defendants stole and converted proceeds of the investment for their personal gain and without privilege, justification, permission, accounting to or reimbursement of Plaintiff.

99.     By failing and refusing to account for or return and reimburse such funds, Defendants wrongfully exerted dominion over the property of Plaintiff in violation of their rights

19

Case ID: 190901274

and applicable law.

100.    As a direct and proximate result of the aforementioned conversion of Defendants, Plaintiff has been harmed.

WHEREFORE, Plaintiff demands judgment in its favor and against the Defendants, jointly and severally, in the amount in excess of $50,000.00, plus punitive damages, costs, interest, attorneys' fees and such other relief as the Court deems equitable, just and proper.

## COUNT VI
### UNJUST ENRICHMENT
**(Plaintiff v. Defendants)**

101.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if set forth fully herein.

102.    At all material times hereto, Defendants have benefited from the ill-gotten gains of their improper and unlawful scheme, as more fully set forth above.

103.    As a result, Defendants have been unjustly enriched at the expense of Plaintiff, thus entitling Plaintiff to damages.

104.    Plaintiff has no adequate remedy at law and injustice can only be avoided by compelling Defendants to pay Plaintiff the damages requested by Plaintiff in this Complaint.

WHEREFORE, Plaintiff demands judgment in its favor and against the Defendants, jointly and severally, in the amount in excess of $50,000.00, plus punitive damages, costs, interest, attorneys' fees and such other relief as the Court deems equitable, just and proper.

## COUNT VII
### ACCOUNTING
**(Plaintiff v. Defendants)**

105.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if set forth fully herein.

20

Case ID: 190901274

106.   The conduct of the Defendants, as described above, violates Plaintiff's statutory, contractual and/or common law rights.

107.   Plaintiff is entitled to an accounting of the affairs, funds, proceeds, earnings and profits by the Defendant, which violated Plaintiff's statutory, contractual and/or common law rights.

108.   Plaintiff is entitled to have the aforesaid accounting of affairs and have any funds, proceeds, earnings and profits disgorged and remitted to Plaintiff.

109.   Defendants, for the reasons described above, are constructive trustees for the benefit of the Plaintiff of all such proceeds, earnings and profits, with all attendant fiduciary responsibilities and obligations thereof.

WHEREFORE, Plaintiff demands judgment in its favor and against the Defendants, jointly and severally, in the amount in excess of $50,000.00, plus punitive damages, costs, interest, attorneys' fees and such other relief as the Court deems equitable, just and proper.

## COUNT VIII
### BREACH OF FIDUCIARY DUTIES AND DUTY OF LOYALTY
### (Plaintiff v. Camac GP and Mascher GP)

110.   Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if set forth fully herein.

111.   Camac GP and Mascher GP owe fiduciary duties and/or a duty of loyalty to Plaintiff.

112.   Accordingly, Defendants have a fiduciary duty not to engage in self-dealing, waste, mismanagement, misappropriation and/or the other illegal, oppressive and fraudulent conduct set forth above, which has harmed the Plaintiff.

113.   Defendants breached their fiduciary duties and duty of loyalty as more fully

21

described above.

114. Defendants' actions were undertaken for their own personal gain and the gain of the other Defendants, without privilege and at the expense of the Plaintiff.

115. As a direct and proximate result of Defendants' breach of their fiduciary duties and duty of loyalty, Plaintiff has been damaged.

WHEREFORE, Plaintiff demands judgment in its favor and against Defendants, jointly and severally, in the amount in excess of $50,000.00, plus punitive damages, costs, interest, attorneys' fees and such other relief as the Court deems equitable, just and proper.

## COUNT IX
### AIDING AND ABETTING BREACH OF FIDUCIARY DUTIES
#### (Plaintiff v. All Defendants except Camac GP and Mascher GP)

116. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if set forth fully herein.

117. Camac GP and Mascher GP owe fiduciary duties and/or a duty of loyalty to Plaintiff under the Partnership Agreements and otherwise.

118. Camac GP and Mascher GP breached such fiduciary duties and duty of loyalty to Plaintiff, as more fully described above.

119. The other Defendants aided and abetted Camac GP and Mascher GP in the breach of their fiduciary duties and duty of loyalty, as more fully described above.

120. The other Defendants' actions were undertaken for their own personal gain and the gain of Camac GP and Mascher GP, without privilege and at the expense of Plaintiff.

121. As a direct and proximate result of the other Defendants' aiding and abetting the breach of Camac GP's and Mascher GP's fiduciary duties and duty of loyalty and the other unlawful conduct set forth in this Complaint, Plaintiff has been damaged.

22

WHEREFORE, Plaintiff demands judgment in his favor and against the Defendants, jointly and severally, in the amount in excess of $50,000.00, plus costs, interest, attorneys' fees and such other relief as the Court deems equitable, just and proper.

## COUNT X
## DETRIMENTAL RELIANCE/PROMISSORY AND EQUITABLE ESTOPPEL
### (Plaintiff v. Defendants)

122.   Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if set forth fully herein.

123.   Defendants made one or more promises, statements, actions and/or omissions to Plaintiff, as more fully set forth herein.

124.   Defendants reasonably expected that such promises, statements, actions and/or omissions would induce action on the part of Plaintiff, and, in fact, Plaintiff did reasonably act upon such promises, statements, actions and/or omissions, as more fully set forth herein.

125.   Such promises and statements should be enforced against the Defendants in order to avoid injustice to Plaintiff.

WHEREFORE, Plaintiff respectfully requests: (a) judgment in its favor and against the Defendants, jointly and severally, (b) an order declaring that such promises and statements shall be specifically enforced in order to avoid injustice; and (c) punitive damages, costs, interest, attorneys' fees and such other relief as the Court deems equitable, just and proper.

## COUNT XI
## CIVIL CONSPIRACY
### (Plaintiff v. Defendants)

126.   Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if set forth fully herein.

127.   The Defendants Pu and Meulmeester, among other co-conspirators that may be

23

Case ID: 190901274

unknown to Plaintiff, formed and operated a malicious combination with a common purpose to injure Plaintiff by performing unlawful and tortious acts and violating the contractual, statutory and common law rights of Plaintiff, as well as by violating state and federal laws, as more fully described above.

128.   The foregoing conduct of the Defendants was performed with intent to injure Plaintiff, or with a knowing disregard that injury would occur to the Plaintiff, and such conduct was without justification or privilege.

129.   One or more of the Defendants, in fact, engaged in overt unlawful acts including, without limitation, racketeering, fraud, misrepresentation, breach of contract, and other conduct that violated the contractual, statutory and common law rights of Plaintiff as described above, causing actual harm to Plaintiff.

130.   By virtue of the formation and operation of this conspiracy by the Defendants, and as a consequence of the above described wrongful acts and conduct and the harm and injury caused to Plaintiff thereby, each Defendant, as a participant in this conspiracy, is liable as a joint tortfeasor for each and every one of the above-described acts committed by each other Defendant/co-conspirator.

131.   As a consequence of the foregoing, Plaintiff has suffered and will continue to suffer irreparable harm and loss, and has sustained damages including, but not limited to, loss of investment, assets, business value, business prospects, business opportunities, present and future profits, and good will, in an amount to be determined at trial, which damages are ongoing and continue unabated at the time of filing of this Complaint.

WHEREFORE, Plaintiff respectfully requests: (a) judgment in its favor and against the Defendants, jointly and severally, and (b) punitive damages, costs, interest, attorneys' fees and

Case ID: 190901274

such other relief as the Court deems equitable, just and proper.

## COUNT XII
## PIERCING CORPORATE VEIL
### (Plaintiff v. All Defendants)

132.   Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if set forth fully herein.

133.   Upon information and belief, Defendants Pu and Meulmeester own all or substantially all of the equity securities of the non-limited partnership entity Defendants (i.e. each entity Defendant other than Camac LP and Mascher LP) and certain other entities engaged in the RICO enterprise and unlawful conduct referenced herein.

134.   Upon information and belief, Defendants Pu and Meulmeester totally dominate and control each non-limited partnership entity Defendant, as well as their other RICO enterprise entities, and receive the benefits of ownership of such entity Defendant and other entities.  For instance, it is believed that all the individual Defendants shared in and unjustly enriched themselves with the funds advanced by Plaintiff Asam and other legitimate funding sources of the Camac LP and Mascher LP.

135.   Upon information and belief, Defendants Pu and Meulmeester have failed to adhere to entity formalities with respect to the operations of each non-limited partnership entity Defendant by, *inter alia*, commingling funds of their own and of their other affiliates with such entity Defendants or causing the funds and assets of the entity Defendants to be transferred to themselves or their other entities without sufficient consideration and by committing fraud with such entities.

136.   Upon information and belief, Defendants Pu and Meulmeester have abused the corporate form of each entity Defendant and their other entities used in the RICO enterprise by using those entities to engage in fraud or to perpetrate fraud upon the Plaintiff and other creditors.

25

137.   Upon information and belief, Defendants Pu and Meulmeester have unlawfully rendered each non-limited partnership entity Defendant to be inadequately capitalized by, *inter alia*, engaging in fraud and sham transactions to directly or indirectly divert funds and other assets to themselves and their other entities involved in the RICO enterprise for their own personal benefit so that such entities cannot meet their obligations to Plaintiff and others.

138.   Based upon the foregoing, Defendants Pu and Meulmeester are jointly and severally liable for the debts and liabilities of each entity Defendant and the other entities used in the RICO enterprise, and vice versa, because those entities are mere alter-egos of the individual Defendants and were used by the individual Defendants to perpetrate fraud and other unlawful conduct upon Plaintiff and others.

139.   Accordingly, the corporate / entity veils of the entity Defendants and the other entities used in the RICO enterprise should be pierced so that all the Defendants (individual and corporate), as well as the other RICO enterprise entities involved, may be jointly and severally liable to Plaintiff in this action.

WHEREFORE, Plaintiff respectfully requests: (a) judgment in its favor and against the Defendants, jointly and severally, (b) piercing of the entity veils of all the non-limited partnership entity Defendants and the other entities used in the RICO enterprise so that all the Defendants and such RICO entities shall be jointly and severally liable to Plaintiff in this action; and (c) punitive damages, costs, interest, attorneys' fees and such other relief as the Court deems equitable, just and proper.

### COUNT XIII
### FRAUDULENT MISREPRESENTATION
#### (Plaintiff v. All Defendants)

Case ID: 190901274

140.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if set forth fully herein.

141.    Defendants misrepresented material facts regarding the state and affairs of the Asam projects, as well as potential benefits of such projects to Plaintiff.

142.    Specifically, Defendants misrepresented:

    a.    That they had knowledge and expertise to engage in real estate projects such as the Asam projects; and

    b.    That the Asam projects would be adequately capitalized and managed; and

    c.    That the state of affairs for the Asam projects was positive when, in fact, projects were failing miserably through the improper and unlawful conduct and mismanagement by the Defendants; and

    d.    That projects required additional capitalization from Asam when, in fact, Defendants were syphoning funds out of the Asam projects.

143.    Defendants knew or ought to have known of their inability to properly manage the Asam projects.

144.    Defendants knew or ought to have known that the Asam projects were not adequately capitalized and managed.

145.    Defendants knew or ought to have known that the Asam projects were failing.

146.    Defendants made such representations to persuade Plaintiff to invest funds in the Asam projects.

147.    Plaintiff relied to their detriment on Defendants' representations.

148.    As a direct and proximate result of Defendants' conduct, the Plaintiff has suffered, continues to suffer and will in the future suffer damages over such conduct.

27

WHEREFORE, Plaintiff respectfully requests: (a) judgment in its favor and against the Defendants, jointly and severally, and (b) punitive damages, costs, interest, attorneys' fees and such other relief as the Court deems equitable, just and proper.

## COUNT XIV
## NEGLIGENT MISREPRESENTATION
### (Plaintiff v. Defendants)

149.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if set forth fully herein.

150.    Defendants misrepresented material facts regarding the state and affairs of the Asam projects, as well as potential benefits of such projects to Plaintiff.

151.    Specifically, Defendants misrepresented:

a.    That they had knowledge and expertise to engage in real estate projects such as the Asam projects; and

b.    That the Asam projects would be adequately capitalized and managed; and

c.    That the state of affairs for the Asam projects was positive when, in fact, projects were failing miserably through the improper and unlawful conduct and mismanagement by the Defendants; and

d.    That projects required additional capitalization from Asam when, in fact, Defendants were syphoning funds out of the Asam projects.

152.    Defendants knew or ought to have known of their inability to properly manage the Asam projects.

153.    Defendants knew or ought to have known that the Asam projects were not adequately capitalized and managed.

154.    Defendants knew or ought to have known that the Asam projects were failing.

Case ID: 190901274

155.    Defendants made such representations to persuade Plaintiff to invest funds in the

Asam projects.

156.    Plaintiff relied to their detriment on Defendants' representations.

157.    As a direct and proximate result of Defendants' conduct, the Plaintiff has suffered,

continues to suffer and will in the future suffer damages over such conduct.

WHEREFORE, Plaintiff respectfully requests: (a) judgment in its favor and against the

Defendants, jointly and severally, and (b) punitive damages, costs, interest, attorneys' fees and

such other relief as the Court deems equitable, just and proper

Respectfully submitted,

**TINOVSKY LAW FIRM**

Dated: January 23, 2020              By: /s/ Vladislav Tinovsky
                                         Vladislav Tinovsky, Esq.
                                         Nik P. Zitev, Esq.
                                         *Attorneys for Plaintiff*

29

Case ID: 190901274

**VERIFICATION**

The undersigned verifies that: (a) he has read the within Complaint and is familiar

with the facts of the within Complaint, which are true and correct to the best of the undersigned's

knowledge, information and belief based upon a reasonable investigation and/or information

obtained from Plaintiff, whose chief executive officer is outside this jurisdiction and unable to

execute this verification by the filing deadline of the within Complaint. This verification is made

subject to the penalties of 18 Pa. C.S.A. §4904, relating to unsworn falsification to authorities.


Dated: January 23, 2020                    /s/ Vladislav Tinovsky
                                           Vladislav Tinovsky, Esquire
                                           *Counsel for Plaintiff*

**TINOVSKY LAW FIRM**
BY:  Vladislav Tinovsky, Esquire
       Nik P. Zitev, Esquire
PA Bar Nos.: 85671 / 323195
Five Neshaminy Interplex
Suite 205
Trevose, PA 19053
215-568-6860
vtinovsky@tinovskylaw.com
nzitev@tinovskylaw.com
*Attorneys for Plaintiff*



Filed and Attested by the
Office of Judicial Records
23      pm

| | |
|---|---|
| ASAM, LLC,<br><br>                Plaintiff,<br><br>    vs.<br><br>JING PU,<br>ROBERT MEULMEESTER,<br>NANJING CAPITAL MANAGEMENT, LLC,<br>1840 S CAMAC ST PARTNERS GP, LLC,<br>1326 N MASCHER ST PARTNERS GP LLC,<br>REVIVAL MANAGEMENT LLC,<br>PASSYUNK LOAN ACQ13 LLC,<br>EDGEWISE REALTY, LLC, and<br>JOHN / JANE / ENTITY DOE<br>DEFENDANTS 1-10,<br><br>                Defendants. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>CIVIL ACTION – LAW AND EQUITY<br>COMMERCE PROGRAM<br><br>SEPTEMBER TERM, 2019<br>NO. 001274<br><br>**JURY TRIAL IS DEMANDED** |

<u>**CERTIFICATE OF SERVICE**</u>

On this 23rd day of January, 2020, the undersigned caused true and correct copies of the within Plaintiff's Complaint to be served upon the parties listed below via electronic means by the court and Regular United States Mail.

Jing Pu
134 S. Barrow Place
Princeton, NJ  08540
-and-
300 Alexander Court, #2002
Philadelphia, PA 19103

Robert Meulmeester
1128 Hall Street
Philadelphia, PA 19147

1840 Camac St Partners GP LLC
230 S. Broad Street, 17th Floor
Philadelphia, PA 19102

1326 N. Mascher St Partners GP LLC
230 S. Broad Street, 17th Floor
Philadelphia, PA 19102

Passyunk Loan ACQ13 LLC
c/o CSC
2591 Interstate Drive
Suite 103

Edgewise Realty, LLC
708 N. American Street
Philadelphia, PA 19123

1

Case ID: 190901274

Harrisburg, PA 17110

Nanjing Capital Management LLC
134 S. Barrow Place
Princeton, NJ 08540

Revival Management LLC
230 S. Broad Street
17th Floor
Philadelphia, PA 19102

**TINOVSKY LAW FIRM**

By: /s/ Vladislav Tinovsky
    Vladislav Tinovsky, Esquire
    *Attorney for Plaintiff*

Dated: January 23, 2020

2

Case ID: 190901274



# EXHIBIT A

# 1840 S Camac St Partners LP
# New Partnership Agreement

## NEW OPERATING AGREEMENT ("NEW PARTNERSHIP AGREEMENT")

### OF

### 1840 S CAMAC ST PARTNERS, LP
### A Pennsylvania Limited Partnership

THIS NEW LIMITED PARTNERSHIP AGREEMENT is dated as of January 12th, 2017 (the "New Partnership Agreement") by and between **1840 S Camac St Partners GP, LLC** (hereinafter referred to as "GP LLC" or the "General Partner") and **ASAM, LLC** (hereinafter referred to as "ASAM" or the "Limited Partner"). The aforementioned parties hereinafter sometimes collectively called the "Partners."

## BACKGROUND

General Partner is the general partner of **1840 S CAMAC ST PARTNERS, LP**, a Pennsylvania limited partnership ("Partnership" or "Company"). **SOUTH PHILADELPHIA CV** was the initial limited partner ("Original Limited Partner"), of the Partnership pursuant to a Limited Partnership Agreement of 1840 S Camac St Partner, L.P. dated November 26, 2013 (the "Partnership Agreement"). According to the Purchase Agreement dated January 12, 2017 (the "Purchase Agreement"), the Original Limited Partner sold all of its membership interest in the Partnership to the New Limited Partner.

As of January 12, 2017, the Partners wish to enter into this New Partnership Agreement. This New Partnership Agreement is superior and binding above any other prior operating agreements for the Company.

In consideration of the mutual covenants contained herein, and intending to be legally bound hereby, the Partners do hereby agree as follows:

## ARTICLE I
## NAME OF PARTNERSHIP; ADDITIONAL LIMITED PARTNERS

1.1. The General Partner and the Limited Partners hereby form a limited partnership under the name of **1840 S CAMAC ST PARTNERS, LP** (the "Partnership"), pursuant to this Limited Partnership Agreement (the "Agreement") and the Pennsylvania Revised Uniform Limited Partnership Act.

1.2. The General Partner may change the name of the Partnership or adopt such trade or fictitious names as it may determine and shall notify each Limited Partner of any change in the name of the Partnership.

1.3. Persons who execute a counterpart of this Agreement whereby they become limited partners of the Partnership, shall be bound by all of the prior contracts and agreements entered into by the Partnership.



1

1840 S Camac St Partners LP
New Partnership Agreement
January 12, 2017

ARTICLE II
PURPOSES

2.1. The purposes of the Partnership are as follows:

2.1.1. To acquire, own, operate, develop, renovate, lease, manage, sell and invest in the real estate known as 1840-44 S Camac Street and 1839 S Iseminger St, Philadelphia, PA 19148 (the "Property"), or any other real estate as the General Partner may determine all of which, collectively shall be referred to as the "Property" and as may be amended or revised from time to time in the ordinary course of business.

2.1.2. To do any and all other acts and things which may be necessary, incidental or convenient to carry on the foregoing purposes of the Partnership.

2.2. The purposes described in Section 2.1 are collectively referred to herein as the "Business" of the Partnership.

ARTICLE III
PRINCIPAL PLACE OF BUSINESS

3.1. The principal office of the Partnership shall be c/o Industrious, 230 S Broad St, 17th Floor, Philadelphia, PA 19102 or such other location(s) as the General Partner may determine.

ARTICLE IV
TERM

4.1. As promptly as possible following the execution and delivery of this Agreement, the General Partner, as hereinafter defined in Section 6.2, shall cause a Certificate of Limited Partnership (the "Certificate") to be prepared and filed in accordance with the Pennsylvania Uniform Limited Partnership Act. The Partnership shall be deemed to have commenced as of the date of the filing of the Certificate (the "Commencement Date") and shall continue until the one hundredth (100th) year anniversary of the Commencement Date, unless sooner terminated as hereafter provided. The General Partner shall file and record the Certificate, any amendments to the Certificate required by applicable law, any fictitious name certificates and any other documents required by or appropriate under the laws of any jurisdiction in which the Partnership shall carry on its Business or necessary or appropriate in connection with the preservation of the limited liability of each Limited Partner.

ARTICLE V
CAPITAL CONTRIBUTIONS, FUNDING REQUIREMENTS

5.1. Set forth on Schedule A hereto opposite the name and address of each Partner is his or its (i) initial capital contribution ("Initial Contribution") and (ii) percentage share in the profits and losses and capital of the Partnership ("Profit and Loss Percentage"). The Initial Contributions have been heretofore made or are being made simultaneously with the execution hereof.

1840 S Camac St Partners LP
New Partnership Agreement
January 12, 2017

5.2. All funds, including working capital, when and as required in the sole and absolute discretion of the General Partner to carry out the purposes of the Partnership, may, in its sole and absolute discretion but without obligation to do so, be advanced by the General Partner. All such funds advanced by the General Partner shall be evidenced by interest-bearing notes and shall be deemed Partner Loans (as defined in Section 6.12 hereof).

5.3. Except as otherwise provided by law, the liability of the Limited Partner (or of each Limited Partner) shall be limited to the aggregate amount of the capital contributions which such Limited Partner is required to make in accordance with the provisions of Section 5.1 hereof and the Limited Partner shall have no (or none of the Limited Partners shall have any) further personal liability to contribute money to, or in respect of, the liabilities or the obligations of the Partnership, nor shall the Limited Partner(s) be personally liable for any obligations of the Partnership except pursuant to this Article V.

5.4. A Partner shall not have any obligation to the Partnership or to any other Partner to restore any negative balance in his capital account. No Partner may withdraw capital or receive any distributions except as specifically provided herein. No interest shall be paid by the Partnership on any capital contributions to the Partnership.

5.5. The General Partner is authorized to require per its sole discretion an additional equity capital funding ("Additional Contribution") from the Limited Partner in addition to the Initial Contribution per a capital call (the "Capital Call"). The Limited Partner will have to follow up on such request for a Capital Call within 30 days of the announcement. Failure to do so authorizes the General Partner to raise capital that my dilute the Limited Partner's allocation as per Section 7 and Section 8.

ARTICLE VI
MANAGEMENT; RIGHTS OF GENERAL PARTNERS AND DUTIES OF MANAGING
PARTNERS

6.1. Except as specifically provided in this Agreement, the business and affairs of the Partnership shall be controlled by the General Partner.

6.2. **1840'S CAMAC ST PARTNERS GP, LLC**, a duly organized Pennsylvania Limited Liability Company is hereby designated the General Partner of the Partnership. The General Partner shall be entitled to conduct the ordinary and usual business and affairs of the Partnership. **REVIVAL MANAGEMENT, LLC**, a duly organized Pennsylvania Limited Liability Company is the managing member of the General Partner who is hereby duly authorized to act on behalf of the General Partner in connection with the business and affairs of the Partnership. **REVIVAL MANAGEMENT, LLC** is authorized to receive payments for fees and profit allocations on behalf of the General Partner in accordance with the New Partnership Agreement.

6.3. The General Partner shall not take any action on behalf of or in the name of the Partnership, or enter into any commitment or obligation binding upon the Partnership, except for: (i) actions expressly provided for in this Partnership Agreement; and (ii) actions authorized by the General Partner in the manner set forth herein.

3

1840 S Camac St Partners LP
New Partnership Agreement
January 12, 2017

6.4. The General Partner shall have full, exclusive and complete discretion in the management and control of the business of the Partnership, and shall have all such other powers of a general partner in a partnership formed under Pennsylvania law without limited partners, the exercise of which are consistent with the Business of the Partnership.

6.5. Except as provided herein, the General Partner shall not be required to devote all of its time or business efforts to the affairs of the Partnership, but shall devote so much time and attention as the General Partner, in its sole and absolute discretion, deems reasonably necessary or advisable to manage the affairs of the Partnership to the best advantage of the Partnership.

6.6. The General Partner may be entitled to receive and may be paid for its management services consisting of the reimbursement of expenses incurred by the General Partner for rent and all other expenses incurred by the General Partner in its operation of the Partnership. Such payments include, but are not limited to, the following:

6.6.1. An acquisition fee of $15,000.00 (the "Acquisition Fee") payable to the General Partner by the Partnership as of the date of the New Partnership Agreement which is January 12, 2017 (the "Effective Date"). The Acquisition Fee will be payable to **REVIVAL MANAGEMENT, LLC**, acting on behalf of the General Partner; and.

6.6.2. A development fee of 10.00% applied over all soft and hard construction costs realized and paid for by the Partnership (the "Development Fee"), is paid to the General Partner by the Partnership as of the date of the New Partnership Agreement which is January 12, 2017 (the "Effective Date"). By the end of each month until the Project has been fully developed and either sold or leases, an invoice will be prepared and provided to determine the Development Fee which will be payable to **REVIVAL MANAGEMENT, LLC**, acting on behalf of the General Partner.

6.7. In addition to the other rights and powers granted to the General Partner, the General Partner shall have the right, upon such terms and conditions as it, in its sole and absolute discretion, may deem advisable:

6.7.1. To cause the Partnership (i) to execute and deliver any contract, amendment, supplement or other document relating to the Business and (ii) subject to the terms of this Agreement, to exercise the rights and fulfill the obligations of the Partnership under the applicable law;

6.7.2. To borrow money on the general credit of the Partnership for use in the Partnership's business;

6.7.3. To make any reasonable expenditures in respect of the Business of the Partnership and take all action reasonably necessary in connection with the maintenance, operation and management thereof;

6.7.4. To retain, engage or employ at the expense of, and for the benefit of, the Partnership such persons, firms or corporations (whether or not any Partner is employed by

4

1840 S Camac St Partners LP
New Partnership Agreement
January 12, 2017

or is, directly or indirectly, connected with such person, firm or corporation, as employees, consultants, accountants, attorneys, brokers, agents, contractors, tradesman, architects, and other professionals as it, in its sole and absolute discretion, shall deem advisable in connection with the Business of the Partnership;

6.7.6. To bring or defend, pay, collect, compromise, arbitrate, resort to legal action or otherwise adjust claims or demands of or against the Partnership; and

6.8. The Limited Partners shall take no part in the management, shall not contribute any services to the Partnership and shall have no authority to act on behalf of, or to bind, the Partnership.

6.9. The Partnership shall promptly reimburse the General Partner, after payment of all liabilities of the Partnership, for any reasonable out-of-pocket expenses incurred by it in connection with the performance of its obligations to, or the obligations of, the Partnership, provided that the Partnership receives appropriate vouchers for such expenses.

6.10. Subject to the provisions of Section 6.3 hereof, any Partner may engage in or possess an interest in other business ventures of any nature or description, independently or with others, including but not limited to the real estate business in all its phases, whether or not competitive with the business of the Partnership, including, without limitation, acquisition, ownership, financing, operation, leasing, management, syndication, brokerage, sale, construction and development of real property or interests therein, and neither the Partnership nor any Partner shall have any right in or to such independent ventures or the income or profits derived therefrom and any such activity shall not be, or be deemed, a breach of any duty owed by any Partner to the Partnership or any other Partner.

6.11. The liabilities of the Partnership or of the Partners as part of or arising out of the activities of the Partnership shall be covered by appropriate policies of public liability insurance to be purchased by the Partnership from carriers approved by the General Partner. Except as set forth in Section 6.3 hereof, no Partner shall be liable, responsible or accountable in damages or otherwise to the Partnership or to any other Partner for any act or failure to act by it, unless such act or failure to act is attributable to willful misconduct, gross negligence, fraud or an intentional violation of any term of this Agreement, in which case such Partner shall indemnify and hold harmless the Partnership and each other Partner from any loss, damage, liability, cost or expense (including reasonable attorneys' fees and expenses) arising from such act or failure to act. The Partnership (to the extent of its assets) shall indemnify and hold harmless the General Partner from any loss, damage, liability, cost or expense (including reasonable attorneys' fees and expenses) arising out of any act or failure to act by the General Partner on matters relating to the Partnership, to the fullest extent permitted by applicable law, except that the Partnership shall not indemnify the General Partner against any loss, damage, liability, cost or expense arising out of willful misconduct, gross negligence, fraud or any intentional violation of any term of this Agreement.

6.12. A Partner may make loans ("Partner Loans") at its option and with the approval of the General Partner, to the Partnership from time to time. Partner Loans shall bear interest at one (1%) percent per annum above the prime rate published in the Wall Street Journal as the prime rate ("Prime Rate") in effect from time to time on the date of each advance, from the date of each advance. Partner Loans shall be repaid out of funds available for distribution



8

1840 S Camac St Partners LP
New Partnership Agreement
January 12, 2017

pursuant to Section 6.1 hereof and shall be repaid prior to making any distribution to any Partner pursuant hereto.

ARTICLE VII
ALLOCATIONS OF PROFITS AND LOSSES

7.1. The "net profits and losses of the Partnership" shall be the net profits and losses of the Partnership for Federal income tax purposes as shown on the returns filed by the Partnership with the Internal Revenue Service.

7.2. The net profits and losses of the Partnership and each item of income, gain, loss, deduction or credit entering into the computation thereof shall be allocated to the Partners each year pro rata in accordance with their respective Profit and Loss Percentages.

7.3. The Profit and Loss Percentages are hereby aligned with Section 8.1 and Section 8.2 that describes the difference in distributions in case of:

7.3.1 Leasing Activities: leasing of parts or all of the Property in which case the pro rata is defined as 50% to the Limited Partner and then 50% to the General Partner.

7.3.2 Capital Event: sale or refinance of parts or all of the Property in which case the pro rata is defined as 70% to the Limited Partner and then 30% to the General Partner.

ARTICLE VIII
DISTRIBUTIONS

8.1. Leasing Activities. The General Partner, after payment of all liabilities and expenses of the Partnership including any applicable Acquisition Fees, and Development Fees as stated in Section 6.1, shall cause the Partnership to distribute to the Partners such amounts of the net cash flow generated out of leasing activities of parts or all of the Property which the General Partner shall at any time reasonably determine to be in excess of the reasonable needs and obligations of the Partnership, all such net proceeds on a quarterly basis to be distributed in the following order of priority:

(a) 50% to the Limited Partner and then 50% to **REVIVAL MANAGEMENT, LLC**, acting on behalf of the General Partner.

8.2 Capital Event. In the event the Partnership refinances all or part of the Property, sells units in the Property, or sells (or similarly disposes of for cash and/or notes) all or substantially all of the Property (whether in a single transaction or in a series of related transactions or in the event of a condemnation or damage and destruction of all or substantially all of the Property), then, in such event, the net proceeds of such refinancing, sale, disposition, condemnation award or insurance proceeds (after the application of the condemnation award and/or insurance proceeds to the costs of repair and restoration, after payment of Partnership liabilities and obligations including any applicable Acquisition Fees, and Development Fees as stated in Section 6.1, and after

1840 S Camac St Partners LP
New Partnership Agreement
January 12, 2017

reservation of any amounts deemed necessary, in the sole discretion of the General Partner, for contingencies of the Partnership) shall be distributed to the Partners in the following order of priority:

> (a) first, 100% to Partners (ratably among such Partners based on the aggregate Unreturned Capital Amount of each Partner immediately prior to the distribution), until the aggregate Unreturned Capital Amount for all Partners is equal to zero; and then
>
> (b) 70% to the Limited Partner and 30% to **REVIVAL MANAGEMENT, LLC**, acting on behalf of the General Partner.

**Definitions Relevant for Distributions:**

"Leasing Activities" means, with respect to each Partner, the activities associated with lease-up and leasing by means of renting parts or all of the Property.

"Capital Event" means, with respect to each Partner, the sale or refinance of parts or all of the Property.

"Capital Amount" means, the Capital Contributions made to the Partnership by the Partners.

"Capital Contribution" means, with respect to each Partner, the amount of cash, cash equivalents, promissory obligations (other than promissory obligations of the contributing Partner) or the fair market value (as determined by the General Partner) of other property that such Partner contributes to the Partnership.

"Unreturned Capital Amount" means, for any Limited Partner's Capital Contribution, as of any time, an amount equal to the excess, if any, of (a) the Capital Amount of such Limited Partner's Capital Contribution, over (b) the aggregate amount of distributions made by the Partnership prior to such time with respect to such Limited Partner's Capital Contribution under Section 8.2(b).

**ARTICLE IX**
**TRANSFER OF A GENERAL PARTNER'S INTEREST AND RIGHT TO CONTINUE THE BUSINESS OF THE PARTNERSHIP**

9.1. Upon the withdrawal, bankruptcy, death, liquidation, dissolution or adjudication of incompetence of the General Partner such General Partner or the legal representative of such General Partner, as the case may be, shall give notice to the Partnership of the occurrence thereof or as soon thereafter as practicable. The Partnership shall not be dissolved but rather shall be continued. Such General Partner or its legal representative, as the case may be, may propose a person (including the successor to the interest in the Partnership of such former General Partner) to become a new General Partner in the place of such former General Partner (the "Retiring General Partner"). A proposed successor General Partner shall become a General Partner only if admitted by any other General Partner, each Limited Partner hereby accepting and consenting, without further action, to the selection of any proposed substitute General Partner accepted by the remaining General Partner. If so admitted, such successor General Partner may, if he shall so elect and if he does not already



7.

1840 S Camac St Partners LP
New Partnership Agreement
January 12, 2017

so own, acquire the interest in the Partnership of the Retiring General Partner at the fair market value of such interest.

9.2. Except as provided in Section 9.1, a person who acquires all or part of the interest of a General Partner in the capital and profits of the Partnership ("General Partnership Interest") shall not thereby become a General Partner. Such person shall, to the extent of the General Partnership Interest so acquired, acquire the ratable share of the General Partner's interest in the capital, net profits and losses determined in accordance with Article VII hereof, and distributions of proceeds payable pursuant to Article VIII hereof, but shall not have any right to participate in the management of the affairs of the Partnership or to vote as a Partner, provided that such person shall become a Limited Partner if admitted as a Limited Partner by the General Partner pursuant to Section 10.3 hereof upon his written acceptance and adoption of all the terms and provisions of this Agreement.

9.3 In the event of the withdrawal, incompetency, bankruptcy, liquidation, dissolution, death or adjudication of all the General Partners, the Partnership shall be terminated and dissolved pursuant to Article XIII hereof unless both (i) within ninety days after the occurrence of such event, the Limited Partners then elect (each Limited Partner accepting and consenting, without further action, to the election in writing by Limited Partners holding at least 75% of the Profit and Loss Percentages) to continue the business of the Partnership for the balance of the term specified in Article V hereof and (ii) all the obligations of the General Partner(s) hereunder are assumed by (a) successor General Partner(s) approved by the Limited Partners (each Limited Partner hereby accepting and consenting without further action, to the selection of (a) successor General Partner(s) approved in writing by Limited Partners holding at least 75% of the Profit and Loss percentages). In the event of any such election or assumption, the relationship of the Partners and of any person who has acquired an interest of a Partner in the Partnership shall be governed by this Agreement.

9.4 The admission of any person as a successor General Partner shall be conditioned in each case upon such person's written acceptance and adoption of all of the terms and provisions of this Agreement.

ARTICLE X
TRANSFER OF A LIMITED PARTNER'S INTEREST

10.1. No Limited Partner shall have the right to sell, assign, dispose of, hypothecate or otherwise transfer all or any part of his interest in the capital and profits of the Partnership ("Limited Partnership Interest") without prior written approval of the General Partner(s) and Limited Partners holding at least 75% of the Profit and Loss Percentages, and subject to Sections 10.3, 10.4 and 10.5 hereof. The transferee of such interest shall become a substitute Limited Partner only upon the terms and conditions set forth in Sections 10.3, 10.4 and 10.5 hereof. No sale, assignment, disposition or other transfer shall be binding upon the General Partner until written notice thereof is received by the General Partner.

10.2. The death, withdrawal, retirement, removal, dissolution, bankruptcy, insanity, incompetency or legal incapacity of a Limited Partner shall not dissolve or terminate the Partnership. In the event of such death, dissolution, bankruptcy, insanity, incompetency or other legal incapacity, the legal representative of such Limited Partner shall be deemed to be the assignee of such Limited Partner's Partnership Interest and may become a substitute

1840 S Camac St Partners LP
New Partnership Agreement
January 12, 2017

Limited Partner upon the terms and conditions set forth in Sections 10.3 and 10.4 hereof. Such representative shall be responsible for all the obligations to the Partnership of such Limited Partner.

10.3. The General Partner shall have the power, in its sole and absolute discretion, to admit as a substitute or additional Limited Partner any person who acquires the Partnership interest, or any part thereof, of a Limited Partner or of a General Partner. The General Partner's failure or refusal to admit a transferee as a substitute or additional Limited Partner shall not affect the right of such transferee to receive the share of net profits and losses pursuant to Article VII and distributions of proceeds pursuant to Article VIII hereof to which his predecessor in interest was entitled.

10.4. The admission of any person as a substitute or additional Limited Partner shall be conditioned upon such person's written acceptance and adoption of all of the terms and provisions of this Agreement.

10.5. No Limited Partner shall have the right to sell, assign, dispose of, hypothecate or otherwise transfer all or any part of his Limited Partnership Interest without first offering to sell the entire Interest to the other Limited Partners who shall have the option to purchase such Interest in accordance with their respective Profit and Loss Percentages. In the event the other Partners elect not to purchase all of such Interest, it may then be sold to a third party, on terms and conditions not more favorable than those offered to the other Limited Partners.

ARTICLE XI
TRANSFERS

11.1. Any person who acquires in any manner whatsoever any interest in the Partnership, irrespective of whether such person has accepted and adopted in writing the terms and provisions of this Agreement, shall be deemed by the acceptance of the benefit of the acquisition thereof to have agreed to be subject to and bound by all the obligations of this Agreement to or by which any predecessor in interest of such person was subject or bound.

11.2. Any transferee of any interest in the Partnership shall have no right to have the value of his interest ascertained or to receive the value of such interest or, in lieu thereof, profits attributable to any right in the Partnership, except as herein set forth.

11.3. In the event of a transfer of all or part of the interest of a Partner, the General Partner shall, upon request of a Partner, cause the Partnership to elect, pursuant to Section 754 of the Internal Revenue Code of 1986, as amended from time to time (the "Code"), or the corresponding provision of subsequent law, to adjust the basis of the Partnership's Property, as provided by Sections 734 and 743 of the Code. All other elections required or permitted to be made by the Partnership under the Code shall be made by the General Partner in such manner as will, in the sole and absolute discretion of the General Partner, be most advantageous to a majority in interest of the Partnership.

11.4. Upon the transfer of all or any part of the Interest of a Partner as hereinabove provided, the net income and losses attributable to the Interest so transferred shall be allocated between the transferor and transferee as of the date set forth on the written assignment, and such allocation shall be based upon the number of days during the

9

1840 S Camac St Partners LP
New Partnership Agreement
January 12, 2017

applicable fiscal year of the Partnership that the interest so transferred was held by each of them, either with or without regard to the results of Partnership activities during the period in which each was the holder. Distributions shall be made to the holder of record of the interest on the date of distribution.

11.5. No sale or exchange of any interest in the Partnership may be made if the interest sought to be sold or exchanged, when added to the total of all other interests sold or thereto, would result in the termination of the Partnership under Section 708 of the Code or any successor statute. No sale or other disposition of an interest in the Partnership may be made except in compliance with all Federal, state and other applicable laws, including Federal and state securities laws.

ARTICLE XII
DISSOLUTION AND TERMINATION

12.1. The Partnership shall be dissolved and its business wound up upon the earliest to occur of the following events:

12.1.1. The expiration of the term provided in Section 4.1 hereof or by mutual consent as provided therein;

12.1.2. The withdrawal, bankruptcy, liquidation or dissolution of the entity comprising the General Partner, (or all the General Partners) unless the conditions specified in Sections 9.3 and 9.4 hereof are satisfied; or

12.1.3. The happening of any other event causing the dissolution of the Partnership under applicable law.

12.2. Upon the termination and dissolution of the Partnership, the General Partner(s) or, if there is no General Partner, any person elected to perform such liquidation by the written consent of Limited Partner(s) holding at least 90% of the Profit and Loss Percentages shall proceed with the liquidation of the Partnership, and the proceeds of such liquidation shall be applied and distributed in accordance with the provisions of Section 8.2 hereof.

12.3. In the event it becomes necessary to make a distribution of Partnership Property in kind, such Property shall be transferred and conveyed to the General Partner(s) and Limited Partner(s) or his (their) assignees so as to vest in each of him (them) an interest in the whole of said Property equal to his (their) interests in the distribution of proceeds in accordance with Section 8.2 hereof.

12.4. Notwithstanding anything to the contrary contained herein, while any third-party loans, other than a Partner Loan, (individually the "Loan" or collectively the "Loans") are outstanding and, until all of its obligations have been paid pursuant to the Loan(s), the Partnership shall not and will not voluntarily dissolve.

ARTICLE XIII
ACCOUNTING AND RELATED MATTERS

10

1840 S Camac St Partners LP
New Partnership Agreement
January 12, 2017

13.1. The fiscal year of the Partnership shall end on December 31 of each year.

13.2. The General Partner, at the expense of the Partnership, shall keep, or cause to be kept, full and accurate records of all transactions of the Partnership.

13.3. All such records shall at all times be maintained at any office designated by the General Partner, and such office shall be open during reasonable business hours for the inspection and examination by any Limited Partner and its agents, all of whom shall have the right to make copies thereof and of any correspondence or other materials relating to or arising out of the Business of the Partnership.

13.4. The General Partner shall cause to be prepared the tax returns of the Partnership and a balance sheet and a report of the receipts, disbursements, net profits and losses and cash flow of the Partnership and the share of the net profits and losses of each of the Partners for such fiscal year. The General Partner shall, promptly upon receipt of such balance sheet and report, transmit a copy thereof to each Limited Partner. The Partnership may retain such firm of independent certified public accountants as the General Partner shall reasonably select.

13.5. All property of the Partnership shall be held in the name of the Partnership or in the names of one or more nominees designated by the General Partner.

13.6. The funds of the Partnership shall be deposited in the name of the Partnership in such bank account or accounts as shall be designated by the General Partner or invested in such short-term obligations as the General Partner shall determine.

13.7. Intentionally left blank.

ARTICLE XIV
INDEMNIFICATION OF THE GENERAL PARTNER

14.1. To the fullest extent permitted by law, the General Partner and all officers, directors, members, agents and employees of any General Partner (individually, an "Indemnitee") shall be indemnified and held harmless by the Partnership from and against any and all losses, claims, damages, liabilities, whether joint or several, expenses (including legal fees and expenses), judgments, fines, settlements and other amounts arising from any and all claims, demands, actions, suits or proceedings, civil, criminal, administrative or investigative, in which the Indemnitee may be involved, or threatened to be involved, as a party or otherwise, by reason of its status as a General Partner or an officer, director, agent or employee of a General Partner, regardless of whether the Indemnitee continues to be a General Partner or an officer, director, member, agent or employee of a General Partner at the time any such liability or expense is paid or incurred if (a) the Indemnitee acted in good faith and any manner it reasonably believed to be in, or not opposed to, the best interests of the Partnership and, with respect to any criminal proceeding, had no reasonable cause to believe its conduct was unlawful, and (b) the Indemnitee's conduct did not constitute gross negligence or willful or wanton misconduct. The termination of any action, suit or proceeding by judgment, order, settlement, conviction or upon a plea of nolo contendere, or its equivalent, shall not, of itself, create a presumption that the Indemnitee acted in a manner



1840 S Camac St Partners LP
New Partnership Agreement
January 12, 2017

contrary to that specified in (a) or (b) above.

14.2. Any indemnification under this Article XIV, unless ordered by a court, shall be made by the Partnership only as authorized in the specific case and only upon a determination (a) by the General Partner if none of the General Partner(s) is a named defendant or respondent in the proceeding, or (b) by the Limited Partners by the affirmative vote of those holding at least 51% of the Profit and Loss Percentages, or (c) if neither (a) nor (b) hereof is applicable, in the opinion of independent legal counsel that indemnification of the Indemnitee is proper in the circumstances because the Indemnitee has met the applicable standard of conduct set forth in paragraph 14.1 above.

14.3. To the fullest extent permitted by law, expenses incurred by an Indemnitee in defending any claim, demand, action, suit or proceeding subject to this Article XIV shall, from time to time, be advanced by the Partnership prior to the final disposition of such claim, demand, action, suit or proceeding upon the receipt by the Partnership of an undertaking by or on behalf of the Indemnitee to repay such amount unless it shall be determined that such person is entitled to be indemnified as authorized in this Article XIV.

14.4. The indemnification of this Article XIV shall be in addition to any other rights of an Indemnitee under any agreement, pursuant to any vote of the Partners, as a matter of law or otherwise, both as to action in the Indemnitee's capacity as a General Partner or as an officer, director, member, agent or employee of a General Partner, and shall continue as to an Indemnitee who has ceased to serve in such capacity and shall inure to the benefit of the heirs, successors, assigns and personal representatives of the Indemnitee.

14.5. Any indemnification under this Article XIV shall be satisfied solely out of the assets of the Partnership. In no event may an Indemnitee subject any Limited Partner to personal liability by reason of these indemnification provisions. An Indemnitee shall not be denied indemnification under this Article XIV because the Indemnitee had an interest in the transaction with respect to which the indemnification applies if the transaction was otherwise permitted by the terms of this Agreement.

ARTICLE XV
GENERAL

15.1. Each Partner represents and warrants to each other Partner and the Partnership that, except as heretofore disclosed to and approved by the General Partner, (i) its Partnership Interest is being acquired solely for its own account, for investment, and is not being purchased with a view to or for the resale, distribution, subdivision or fractionalization thereof, (ii) it has no contract, undertaking, understanding, agreement or arrangement, formal or informal, with any person to sell, transfer or pledge all or any portion of its interest in the Partnership, and (iii) it has no present plans to enter into any such contract, undertaking, understanding, agreement or arrangement;

15.2. Whenever any notice, request or consent is required or permitted to be given hereunder, such notice, request or consent shall be in writing, signed by or on behalf of the person giving the notice, and shall be deemed to have been given when delivered by personal delivery or five days after it was mailed by registered mail, postage prepaid, addressed to the Partner to whom such notice or request is to be given at its address set forth

1840 S Camac St Partners LP
New Partnership Agreement
January 12, 2017

on Schedule A hereto, or at such other address as shall be stated on a notice similarly given to the Partnership and all the Partners.

15.3. Except as herein otherwise provided to the contrary, this Agreement shall be binding upon and inure to the benefit of the parties hereto, their personal representatives, successors and assigns. None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditor of the Partnership.

15.4. Each Limited Partner hereby constitutes and appoints the General Partner as his true and lawful attorney-in-fact, to make, execute, sign, acknowledge, record or file with respect to the Partnership:

15.4.1. the Certificate of Limited Partnership, any amendment or supplement thereto required as a result of any amendment to this Agreement;

15.4.2. all instruments, documents or certificates which may be deemed necessary or desirable by the General Partner to effect the admission of a substitute Limited Partner in accordance with the terms hereof or the termination of the Partnership upon its dissolution;

15.4.3. any fictitious name or similar certificate required by law to be filed on behalf of the Partnership; and

15.4.4. all such other instruments, documents and certificates which may from time to time be required by the laws of any jurisdiction, domestic or foreign, to effectuate, implement, continue and defend the valid and subsisting existence of the Partnership and its power to carry out its purposes as set forth in this Agreement PROVIDED, HOWEVER, that the General Partner shall not have any authority to take any action as such attorney-in-fact which could in any way increase the liability of any Limited Partner beyond that expressly set forth herein.

15.5. This Agreement may not be modified or amended without (1) the written consent of Limited Partners holding at least 90% of the Profit and Loss Percentages and (2) the consent of the General Partner(s) holding at least one (1%) percent of interest except that any modification of amendment affecting (i) the allocation of net profits and losses of the Partnership and distributions of cash or Partnership Property; or (ii) this Section 15.5, shall require the written consent of all the Partners. No amendment, modification or waiver of this Agreement or any part hereof and no notice or consent required or permitted to be given pursuant to the terms of this Agreement shall be valid or effective unless in writing and signed by the party or parties sought to be charged therewith; and no waiver of any breach of condition of this Agreement shall be deemed to be a waiver of any other subsequent breach of conditions, whether of like or different nature.

15.6. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa. For the purpose of this Agreement

15.6.1. The term "person" shall include any individual, corporation,

1840 S Camac St Partners LP
New Partnership Agreement
January 12, 2017

partnership, association, trust, joint stock company or unincorporated organization;

15.6.2. The "bankruptcy" of the General Partner or of a Limited Partner shall be deemed to have occurred upon the happening of any of the following: (i) the filing of an application by such person for, or a consent to, the appointment of a trustee of its or his assets; (ii) the filing by such person of a voluntary petition in bankruptcy or the seeking of relief under Title 11 of the United States Code, as now constituted or hereafter amended, or the filing of a pleading in any court of record admitting its or his inability to pay its or his debts as they come due; (iii) the failure of such person to pay its or his debts as such debts become due; (iv) the making by such person of a general assignment for the benefit of creditors; (v) the filing by such person of an answer admitting the material allegations of, or its or his consenting to, or defaulting in answering, a bankruptcy petition filed against it to him in any bankruptcy proceeding or petition seeking relief under Title 11 of the United States Code, as now constituted or as hereafter amended; or (vi) the entry of an order, judgment or decree by any court of competent jurisdiction adjudicating such person a bankrupt or for relief in respect of such person or appointing a trustee of its or his assets, and such order, judgment or decree continued unstayed and in effect for any period of 60 consecutive days.

15.7. This Agreement shall be construed in accordance with and governed by the laws and decisions of the Commonwealth of Pennsylvania without regard to the conflicts of law principles thereof.

15.8. This Agreement constitutes the entire agreement among the parties pertaining to the subject matter hereof and supersedes all prior and contemporaneous agreements and understandings of the parties in connection therewith. No covenant, representation or condition not expressed in this Agreement shall affect, or be effective to interpret, change or restrict, the express provisions of this Agreement.

15.9. This Agreement may be executed in counterparts which when taken together shall constitute one agreement binding on all the parties notwithstanding that all the parties are not signatories to the same counterpart.

ARTICLE XVI
SPE PROVISIONS

16.1. The Partnership shall be a "Single Purpose Entity" as long as any Loan(s) are outstanding and, until all of its obligations have been paid pursuant to the Loan, the partnership shall not and will not:

(i) engage in any business or activity other than the ownership, operation and maintenance of the Property, and activities incidental thereto;

(ii) acquire or own any assets other than (A) the Property, and (B) such incidental Personal Property as may be necessary for the operation of the Property;

(iii) merge into or consolidate with any Person, or dissolve, terminate, liquidate in whole or in part, transfer or otherwise dispose of all or substantially all of its assets or change its legal structure;

1840 S Camac St Partners LP
New Partnership Agreement
January 12, 2017

(iv) fail to observe all organizational formalities, or fail to preserve its existence as an entity duly organized, validly existing and in good standing (if applicable) under the applicable Legal Requirements of the jurisdiction of its organization or formation, or amend, modify, terminate or fail to comply with the provisions of its organizational documents;

(v) own any subsidiary, or make any investment in, any Person;

(vi) commingle its assets with the assets of any other Person, or permit any Affiliate or constituent party independent access to its bank accounts;

(vii) incur any debt, secured or unsecured, direct or contingent (including guaranteeing any obligation), other than (A) the Debt, (B) trade and operational indebtedness incurred in the ordinary course of business with trade creditors, provided such indebtedness is (1) unsecured, (2) not evidenced by a note, (3) on commercially reasonable terms and conditions, and (4) due not more than sixty (60) days past the date incurred and paid on or prior to such date, and/or (C) financing leases and purchase money indebtedness incurred in the ordinary course of business relating to Personal Property on commercially reasonable terms and conditions; provided however, the aggregate amount of the indebtedness described in (B) and (C) shall not exceed at any time three percent (3%) of the outstanding principal amount of the Note;

(viii) fail to maintain its records, books of account, bank accounts, financial statements, accounting records and other entity documents separate and apart from those of any other Person; except that Borrower's financial position, assets, liabilities, net worth and operating results may be included in the consolidated financial statements of an Affiliate, provided that such consolidated financial statements contain a footnote indicating that Borrower is a separate legal entity and that it maintains separate books and records;

(ix) enter into any contract or agreement with any general partner, member, shareholder, principal, guarantor of the obligations of Borrower, or any Affiliate of the foregoing, except upon terms and conditions that are intrinsically fair, commercially reasonable and substantially similar to those that would be available on an arm's-length basis with unaffiliated third parties;

(x) maintain its assets in such a manner that it will be costly or difficult to segregate, ascertain or identify its individual assets from those of any other Person;

(xi) assume or guaranty the debts of any other Person, hold itself out to be responsible for the debts of any other Person, or otherwise pledge its assets for the benefit of any other Person or hold out its credit as being available to satisfy the obligations of any other Person;

(xii) make any loans or advances to any Person;

(xiii) fail to file its own tax returns or files a consolidated federal income tax return with any Person (unless prohibited or required, as the case may be, by applicable Legal Requirements));

1840 S Camac St Partners LP
New Partnership Agreement
January 12, 2017

(xiv) fail either to hold itself out to the public as a legal entity separate and distinct from any other Person or to conduct its business solely in its own name or fail to correct any known misunderstanding regarding its separate identity;

(xv) fail to maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations;

(xvi) without the unanimous written consent of all of its partners, (a) file or consent to the filing of any petition, either voluntary or involuntary, to take advantage of any Creditors Rights Laws, (b) seek or consent to the appointment of a receiver, liquidator or any similar official, (c) take any action that might cause such entity to become insolvent, or (d) make an assignment for the benefit of creditors;

(xvii) fail to allocate shared expenses (including, without limitation, shared office space and services performed by an employee of an Affiliate) among the Persons sharing such expenses and to use separate stationery, invoices and checks;

(xviii) fail to remain solvent or pay its own liabilities (including, without limitation, salaries of its own employees) only from its own funds, provided that there are sufficient funds from the operation of the Property to do so;

(xix) acquire obligations or securities of its partners, members, shareholders or other affiliates, as applicable;

(xx) violate or cause to be violated the assumptions made with respect to Borrower and its principals in any opinion letter pertaining to substantive consolidation delivered to Lender in connection with the Loan; or

(xxi) fail to maintain a sufficient number of employees in light of its contemplated business operations.

***

**[SIGNATURES TO FOLLOW ON NEXT PAGE]**

1840 S Camac St Partners LP
New Partnership Agreement
January 12, 2017

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement as of the day and year first above written.

**GENERAL PARTNER:**
1840 S CAMAC ST PARTNERS GP, LLC

BY: _____
Name:
Title:

**LIMITED PARTNER:**
ASAM, LLC

BY: _____
Name:
Title:   ARAM AYLAZ

17.

1840 S Camac St Partners LP
New Partnership Agreement
January 12, 2017

### SCHEDULE A

Set forth below at the name of each Partner are (i) the address of the Partner, (ii) the amount of their Initial Contribution, if any, and (iii) his/her/its Profit and Loss Percentage in the case of **Leasing Activities** as per Section 7.3, Section 7.3.1 and Section 8.1.

| # | PARTNER | CAPITAL CONTRIBUTION | PROFIT & LOSS % |
|---|---------|----------------------|-----------------|
| 1. | 1840 S CAMAC ST PARTNERS GP, LLC C/O INDUSTRIOUS 230 S BROAD ST, 17TH FLOOR PHILADELPHIA, PA 19102 | NONE | 50% |
| 2. | ASAM, LLC 1401 N. RHODES STREET, #505 ARLINGTON, VA 22209 | $115,575 | 50% |
| | TOTAL: | $115,575 | 100% |

Set forth below at the name of each Partner are (i) the address of the Partner, (ii) the amount of their Initial Contribution, if any, and (iii) his/her/its Profit and Loss Percentage in the case of a **Capital Event** as per Section 7.3, Section 7.3.2 and Section 8.2.

| # | PARTNER | CAPITAL CONTRIBUTION | PROFIT & LOSS % |
|---|---------|----------------------|-----------------|
| 1. | 1840 S CAMAC ST PARTNERS GP, LLC C/O INDUSTRIOUS 230 S BROAD ST, 17TH FLOOR PHILADELPHIA, PA 19102 | NONE | 25% |
| 2. | ASAM, LLC 1401 N. RHODES STREET, #505 ARLINGTON, VA 22209 | $115,575 | 75% |
| | TOTAL: | $115,575 | 100% |



18



Filed and Attested by the
Office of Judicial Records
23 ... pm

# EXHIBIT B

Case ID: 190901274

## 1326 N MASCHER ST PARTNERS LP LIMITED PARTNERSHIP AGREEMENT

THIS AMENDED LIMITED PARTNERSHIP AGREEMENT is dated as of December 18 2015 by and between **1326 N MASCHER ST PARTNERS GP LLC** (hereinafter referred to as the "General Partner") and **ASAM, LLC** (hereinafter referred to as the "Limited Partners"). The aforementioned parties hereinafter sometimes collectively called the "Partners." In consideration of the mutual covenants contained herein, and intending to be legally bound hereby, the Partners do hereby agree as follows:

### ARTICLE I
### NAME OF PARTNERSHIP; ADDITIONAL LIMITED PARTNERS

1.1. The General Partner and the Limited Partners hereby form a limited partnership under the name of **1326 N MASCHER ST PARTNERS LP** (the "Partnership"), pursuant to this Limited Partnership Agreement (the "Agreement") and the Pennsylvania Revised Uniform Limited Partnership Act.

1.2. The General Partner may change the name of the Partnership or adopt such trade or fictitious names as it may determine and shall notify each Limited Partner of any change in the name of the Partnership.

1.3. Persons who execute a counterpart of this Agreement whereby they become limited partners of the Partnership, shall be bound by all of the prior contracts and agreements entered into by the Partnership

### ARTICLE II
### PURPOSES

2.1. The purposes of the Partnership are as follows:

2.1.1. To acquire, own, operate, develop, renovate, lease, manage, sell and invest in the real estate known as 1326-36 N Mascher St, Philadelphia PA 19122 (the "Property"), or any other real estate as the General Partner may determine all of which, collectively shall be referred to as the "Property" and as shall be set forth on Schedule 2.1, as may be amended or revised from time to time in the ordinary course of business.

2.1.2. To do any and all other acts and things which may be necessary, incidental or convenient to carry on the foregoing purposes of the Partnership.

2.2. The purposes described in Section 2.1 are collectively referred to herein as the "Business" of the Partnership.

### ARTICLE III
### PRINCIPAL PLACE OF BUSINESS

3.1. The principal office of the Partnership shall be **230 S Broad St 17th Floor, Philadelphia PA 19103** or such other location(s) as the General Partner may determine.

### ARTICLE IV

Case ID: 190901274

TERM

4.1. As promptly as possible following the execution and delivery of this Agreement, the General Partner, as hereinafter defined in Section 6.2, shall cause a Certificate of Limited Partnership (the "Certificate") to be prepared and filed in accordance with the Pennsylvania Uniform Limited Partnership Act. The Partnership shall be deemed to have commenced as of the date of the filing of the Certificate (the "Commencement Date") and shall continue until the one hundredth (100th) year anniversary of the Commencement Date, unless sooner terminated as hereafter provided. The General Partner shall file and record the Certificate, any amendments to the Certificate required by applicable law, any fictitious name certificates and any other documents required by or appropriate under the laws of any jurisdiction in which the Partnership shall carry on its Business or necessary or appropriate in connection with the preservation of the limited liability of each Limited Partner.

ARTICLE V
CAPITAL CONTRIBUTIONS, FUNDING REQUIREMENTS

5.1. Set forth on Schedule A hereto opposite the name and address of each Partner is his or its (i) initial capital contribution ("Initial Contribution") and (ii) percentage share in the profits and losses and capital of the Partnership ("Profit and Loss Percentage"). The Initial Contributions have been heretofore made or are being made simultaneously with the execution hereof.

5.2. All funds, including working capital, when and as required in the sole and absolute discretion of the General Partner to carry out the purposes of the Partnership, may, in its sole and absolute discretion but without obligation to do so, be advanced by the General Partner. All such funds advanced by the General Partner shall be evidenced by interest-bearing notes and shall be deemed Partner Loans (as defined in Section 6.12 hereof).

5.3. Except as otherwise provided by law, the liability of the Limited Partner (or of each Limited Partner) shall be limited to the aggregate amount of the capital contributions which such Limited Partner is required to make in accordance with the provisions of Section 5.1 hereof and the Limited Partner shall have no (or none of the Limited Partners shall have any) further personal liability to contribute money to, or in respect of, the liabilities or the obligations of the Partnership, nor shall the Limited Partner(s) be personally liable for any obligations of the Partnership except pursuant to this Article V.

5.4. A Partner shall not have any obligation to the Partnership or to any other Partner to restore any negative balance in his capital account. No Partner may withdraw capital or receive any distributions except as specifically provided herein. No interest shall be paid by the Partnership on any capital contributions to the Partnership.

Case ID: 190901274

ARTICLE IV
MANAGEMENT: RIGHTS OF GENERAL PARTNERS AND DUTIES OF MANAGING
PARTNERS

6.1. Except as specifically provided in this Agreement, the business and affairs of the Partnership shall be controlled by the General Partner.

6.2. **1326 N MASCHER ST PARTNERS GP LLC**, a duly organized Pennsylvania Limited Liability Company, is hereby designated the General Partner of the Partnership. The General Partner shall be entitled to conduct the ordinary and usual business and affairs of the Partnership.

6.3. The General Partner shall not take any action on behalf of or in the name of the Partnership, or enter into any commitment or obligation binding upon the Partnership, except for: (i) actions expressly provided for in this Partnership Agreement; and (ii) actions authorized by the General Partner in the manner set forth herein.

6.4. The General Partner shall have full, exclusive and complete discretion in the management and control of the business of the Partnership, and shall have all such other powers of a general partner in a partnership formed under Pennsylvania law without limited partners, the exercise of which are consistent with the Business of the Partnership.

6.5. Except as provided herein, the General Partner shall not be required to devote all of its time or business efforts to the affairs of the Partnership, but shall devote so much time and attention as the General Partner, in its sole and absolute discretion, deems reasonably necessary or advisable to manage the affairs of the Partnership to the best advantage of the Partnership.

6.6. The General Partner may be entitled to receive and may be paid for its management services consisting of the reimbursement of expenses incurred by the General Partner for rent and all other expenses incurred by the General Partner in its operation of the Partnership. Such payments include, but are not limited to, the following:

6.6.1. The General Partner shall be paid the following fees:

In exchange for acquisition, finance, due diligence, development management, and any remaining daily operating management services, the General Partner shall be paid an overall asset management fee ("Asset Management Fee") equal to 1.5% of the Property's cumulative invested capital comprising acquisition cost, construction hard and soft costs (the "Invested Capital") necessary to complete the work, payable at the end of each quarter and applicable to the Invested Capital at that time; and

In the event a Property is leased to a third-party, the General Partner shall be paid a management fee equal to five (5) percent of the net monthly rent collected ("Management Fee"). The Management Fee shall be paid upon receipt of the rent from the tenant/occupant.

6.6.2. The General Partner shall be paid the following profit allocation:

Case ID: 190901274

~~In the event a Property is sold, the General Partner shall be entitled to receive 50% of the net profit realized from said sale; and~~

~~In the event a Property is leased to a third-party, the General Partner shall be entitled to receive 50% of the net profit realized from said leasing.~~

6.7. In addition to the other rights and powers granted to the General Partner, the General Partner shall have the right, upon such terms and conditions as it, in its sole and absolute discretion, may deem advisable:

6.7.1. To cause the Partnership (i) to execute and deliver any contract, amendment, supplement or other document relating to the Business and (ii) subject to the terms of this Agreement, to exercise the rights and fulfill the obligations of the Partnership under the applicable law;

6.7.2. To borrow money on the general credit of the Partnership for use in the Partnership's business;

6.7.3. To make any reasonable expenditures in respect of the Business of the Partnership and take all action reasonably necessary in connection with the maintenance, operation and management thereof;

6.7.4. To retain, engage or employ at the expense of, and for the benefit of, the Partnership such persons, firms or corporations (whether or not any Partner is employed by or is, directly or indirectly, connected with such person, firm or corporation), as employees, consultants, accountants, attorneys, brokers, agents, contractors, tradesman, architects, and other professionals as it, in its sole and absolute discretion, shall deem advisable in connection with the Business of the Partnership;

6.7.5. To bring or defend, pay, collect, compromise, arbitrate, resort to legal action or otherwise adjust claims or demands of or against the Partnership; and

6.8. The Limited Partners shall take no part in the management, shall not contribute any services to the Partnership and shall have no authority to act on behalf of, or to bind, the Partnership.

6.9. The Partnership shall promptly reimburse the General Partner, after payment of all liabilities of the Partnership, for any reasonable out-of-pocket expenses incurred by it in connection with the performance of its obligations to, or the obligations of, the Partnership; provided that the Partnership receives appropriate vouchers for such expenses.

6.10. Subject to the provisions of Section 6.5 hereof, any Partner may engage in or possess an interest in other business ventures of any nature or description, independently or with others, including but not limited to the real estate business in all its phases, whether or not competitive with the business of the Partnership, including, without limitation, acquisition, ownership, financing, operation, leasing, management, syndication, brokerage, sale, construction and development of real property or interests therein, and neither the Partnership

Case ID: 190901274

nor any Partner shall have any right in or to such independent ventures or the income or profits derived therefrom and any such activity shall not be, or be deemed, a breach of any duty owed by any Partner to the Partnership or any other Partner.

6.11. The liabilities of the Partnership or of the Partners as part of or arising out of the activities of the Partnership shall be covered by appropriate policies of public liability insurance to be purchased by the Partnership from carriers approved by the General Partner. Except as set forth in Section 5.3 hereof, no Partner shall be liable, responsible or accountable in damages or otherwise to the Partnership or to any other Partner for any act or failure to act by it, unless such act or failure to act is attributable to willful misconduct, gross negligence, fraud or an intentional violation of any term of this Agreement, in which case such Partner shall indemnify and hold harmless the Partnership and each other Partner from any loss, damage, liability, cost or expense (including reasonable attorneys' fees and expenses) arising from such act or failure to act. The Partnership (to the extent of its assets) shall indemnify and hold harmless the General Partner from any loss, damage, liability, cost or expense (including reasonable attorneys' fees and expenses) arising out of any act or failure to act by the General Partner on matters relating to the Partnership, to the fullest extent permitted by applicable law, except that the Partnership shall not indemnify the General Partner against any loss, damage, liability, cost or expense arising out of willful misconduct, gross negligence, fraud or any intentional violation of any term of this Agreement.

6.12. A Partner may make loans ("Partner Loans") at its option and with the approval of the General Partner, to the Partnership from time to time. Partner Loans shall bear interest at one (1%) percent per annum above the prime rate published in the Wall Street Journal as the prime rate ("Prime Rate") in effect from time to time on the date of each advance, from the date of each advance. Partner Loans shall be repaid out of funds available for distribution pursuant to Section 8.1 hereof and shall be repaid prior to making any distribution to any Partner pursuant hereto.

### ARTICLE VII
### ALLOCATIONS OF PROFITS AND LOSSES

7.1. The "net profits and losses of the Partnership" shall be the net profits and losses of the Partnership for Federal income tax purposes as shown on the returns filed by the Partnership with the Internal Revenue Service.

7.2. The net profits and losses of the Partnership and each item of income, gain, loss, deduction or credit entering into the computation thereof shall be allocated to the Partners each year pro rata in accordance with their respective Profit and Loss Percentages.

### ARTICLE VIII
### DISTRIBUTIONS

8.1. The General Partner, after payment of all liabilities and expenses of the Partnership, shall cause the Partnership to distribute to the Partners such amounts of the cash flow which the General Partner shall at any time reasonably determine to be in excess of the reasonable needs and obligations of the Partnership within thirty days of such determination, all such amounts to be distributed in the following strict order of priority:

8.1.1. First, all contributions made by the Limited Partners as set forth on

Case ID: 190901274

Schedule AA@ attached hereto shall be repaid in full without interest prior to the distribution of any funds to any other Limited Partners or the General Partners;

8.1.2. Second, after all of the contributions made by the Limited Partners have been paid in full without interest, the balance shall be paid to all of the Partners pro rata in accordance with their Profit and Loss Percentages as set forth on Schedule AA@.

8.2. The net cash proceeds resulting from the sale, exchange, casualty or other disposition of all or any part of the real estate or property of the Partnership now owned or hereafter acquired, or from the liquidation of such real estate or property, or following a dissolution of the Partnership shall be distributed and applied in the same order as provided in Section 8.1 above, except if there are insufficient funds to repay all Partners' capital contributions, then the capital contributions of the Limited Partner shall be first returned before the return of the capital contributions of the General Partner.

## ARTICLE IX
## TRANSFER OF A GENERAL PARTNER'S INTEREST AND RIGHT TO CONTINUE THE BUSINESS OF THE PARTNERSHIP

9.1. Upon the withdrawal, bankruptcy, death, liquidation, dissolution or adjudication of incompetence of the General Partner such General Partner or the legal representative of such General Partner, as the case may be, shall give notice to the Partnership of the occurrence thereof or as soon thereafter as practicable. The Partnership shall not be dissolved but rather shall be continued. Such General Partner or its legal representative, as the case may be, may propose a person (including the successor to the interest in the Partnership of such former General Partner) to become a new General Partner in the place of such former General Partner (the "Retiring General Partner"). A proposed successor General Partner shall become a General Partner only if admitted by any other General Partner, each Limited Partner hereby accepting and consenting, without further action, to the selection of any proposed substitute General Partner accepted by the remaining General Partner. If so admitted, such successor General Partner may, if he shall so elect and if he does not already so own, acquire the interest in the Partnership of the Retiring General Partner at the fair market value of such interest.

9.2. Except as provided in Section 9.1, a person who acquires all or part of the interest of a General Partner in the capital and profits of the Partnership ("General Partnership Interest") shall not thereby become a General Partner. Such person shall, to the extent of the General Partnership Interest so acquired, acquire the ratable share of the General Partner's interest in the capital, net profits and losses determined in accordance with Article VII hereof, and distributions of proceeds payable pursuant to Article VIII hereof, but shall not have any right to participate in the management of the affairs of the Partnership or to vote as a Partner, provided that such person shall become a Limited Partner if admitted as a Limited Partner by the General Partner pursuant to Section 10.3 hereof upon his written acceptance and adoption of all the terms and provisions of this Agreement.

9.3 In the event of the withdrawal, incompetency, bankruptcy, liquidation, dissolution, death or adjudication of all the General Partners, the Partnership shall be terminated and dissolved pursuant to Article XIII hereof unless both (i) within ninety days after the occurrence of such event, the Limited Partners then elect (each Limited Partner accepting and consenting, without further action, to the election in writing by Limited Partners holding at

least 75% of the Profit and Loss Percentages) to continue the business of the Partnership for the balance of the term specified in Article V hereof and (ii) all the obligations of the General Partner(s) hereunder are assumed by (a) successor General Partner(s) approved by the Limited Partners (each Limited Partner hereby accepting and consenting without further action, to the selection of (a) successor General Partner(s) approved in writing by Limited Partners holding at least 75% of the Profit and Loss percentages). In the event of any such election or assumption, the relationship of the Partners and of any person who has acquired an interest of a Partner in the Partnership shall be governed by this Agreement.

9.4 The admission of any person as a successor General Partner shall be conditioned in each case upon such person's written acceptance and adoption of all of the terms and provisions of this Agreement.

## ARTICLE X
## TRANSFER OF A LIMITED PARTNER'S INTEREST

10.1. No Limited Partner shall have the right to sell, assign, dispose of, hypothecate or otherwise transfer all or any part of his interest in the capital and profits of the Partnership ("Limited Partnership Interest") without prior written approval of the General Partner(s) and Limited Partners holding at least 75% of the Profit and Loss Percentages, and subject to Sections 10.3, 10.4 and 10.5 hereof. The transferee of such interest shall become a substitute Limited Partner only upon the terms and conditions set forth in Sections 10.3, 10.4 and 10.5 hereof. No sale, assignment, disposition or other transfer shall be binding upon the General Partner until written notice thereof is received by the General Partner.

10.2. The death, withdrawal, retirement, removal, dissolution, bankruptcy, insanity, incompetency or legal incapacity of a Limited Partner shall not dissolve or terminate the Partnership. In the event of such death, dissolution, bankruptcy, insanity, incompetency or other legal incapacity, the legal representative of such Limited Partner shall be deemed to be the assignee of such Limited Partner's Partnership Interest and may become a substitute Limited Partner upon the terms and conditions set forth in Sections 10.3 and 10.4 hereof. Such representative shall be responsible for all the obligations to the Partnership of such Limited Partner.

10.3. The General Partner shall have the power, in its sole and absolute discretion, to admit as a substitute or additional Limited Partner any person who acquires the Partnership Interest, or any part thereof, of a Limited Partner or of a General Partner. The General Partner's failure or refusal to admit a transferee as a substitute or additional Limited Partner shall not affect the right of such transferee to receive the share of net profits and losses pursuant to Article VII and distributions of proceeds pursuant to Article VIII hereof to which his predecessor in interest was entitled.

10.4. The admission of any person as a substitute or additional Limited Partner shall be conditioned upon such person's written acceptance and adoption of all of the terms and provisions of this Agreement.

10.5. No Limited Partner shall have the right to sell, assign, dispose of, hypothecate or otherwise transfer all or any part of his Limited Partnership Interest without first offering to

sell the entire interest to the other Limited Partners who shall have the option to purchase such interest in accordance with their respective Profit and Loss Percentages. In the event the other Partners elect not to purchase all of such interest, it may then be sold to a third party, on terms and conditions not more favorable than those offered to the other Limited Partners.

## ARTICLE XI
## TRANSFERS

11.1. Any person who acquires in any manner whatsoever any interest in the Partnership, irrespective of whether such person has accepted and adopted in writing the terms and provisions of this Agreement, shall be deemed by the acceptance of the benefit of the acquisition thereof to have agreed to be subject to and bound by all the obligations of this Agreement to or by which any predecessor in interest of such person was subject or bound.

11.2. Any transferee of any interest in the Partnership shall have no right to have the value of his interest ascertained or to receive the value of such interest or, in lieu thereof, profits attributable to any right in the Partnership, except as herein set forth.

11.3. In the event of a transfer of all or part of the interest of a Partner, the General Partner shall, upon request of a Partner, cause the Partnership to elect, pursuant to Section 754 of the Internal Revenue Code of 1986, as amended from time to time (the "Code"), or the corresponding provision of subsequent law, to adjust the basis of the Partnership's Property as provided by Sections 734 and 743 of the Code. All other elections required or permitted to be made by the Partnership under the Code shall be made by the General Partner in such manner as will, in the sole and absolute discretion of the General Partner, be most advantageous to a majority in interest of the Partnership.

11.4. Upon the transfer of all or any part of the interest of a Partner as hereinabove provided, the net income and losses attributable to the interest so transferred shall be allocated between the transferor and transferee as of the date set forth on the written assignment, and such allocation shall be based upon the number of days during the applicable fiscal year of the Partnership that the interest so transferred was held by each of them, either with or without regard to the results of Partnership activities during the period in which each was the holder. Distributions shall be made to the holder of record of the interest on the date of distribution.

11.5. No sale or exchange of any interest in the Partnership may be made if the interest sought to be sold or exchanged, when added to the total of all other interests sold or thereto, would result in the termination of the Partnership under Section 708 of the Code or any successor statute. No sale or other disposition of an interest in the Partnership may be made except in compliance with all Federal, state and other applicable laws, including Federal and state securities laws.

## ARTICLE XII
## DISSOLUTION AND TERMINATION

12.1. The Partnership shall be dissolved and its business wound up upon the earliest to occur of the following events:

12.1.1. The expiration of the term provided in Section 4.1 hereof or by mutual consent as provided therein;

12.1.2. The withdrawal, bankruptcy, liquidation or dissolution of (the entity comprising) the General Partner, (or all the General Partners) unless the conditions specified in Sections 9.3 and 9.4 hereof are satisfied; or

12.1.3. The happening of any other event causing the dissolution of the Partnership under applicable law.

12.2. Upon the termination and dissolution of the Partnership, the General Partner(s) or, if there is no General Partner, any person elected to perform such liquidation by the written consent of Limited Partner(s) holding at least 90% of the Profit and Loss Percentages shall proceed with the liquidation of the Partnership, and the proceeds of such liquidation shall be applied and distributed in accordance with the provisions of Section 8.2 hereof.

12.3. In the event it becomes necessary to make a distribution of Partnership Property in kind, such Property shall be transferred and conveyed to the General Partner(s) and Limited Partner(s) or his (their) assignees so as to vest in each of him (them) an interest in the whole of said Property equal to his (their) interests in the distribution of proceeds in accordance with Section 8.2 hereof.

12.4. Notwithstanding anything to the contrary contained herein, while any third-party loans, other than a Partner Loan, (individually the "Loan" or collectively the "Loans") are outstanding and, until all of its obligations have been paid pursuant to the Loan(s), the Partnership shall not and will not voluntarily dissolve.

## ARTICLE XIII
## ACCOUNTING AND RELATED MATTERS

13.1. The fiscal year of the Partnership shall end on December 31 of each year.

13.2. The General Partner, at the expense of the Partnership, shall keep, or cause to be kept, full and accurate records of all transactions of the Partnership.

13.3. All such records shall at all times be maintained at any office designated by the General Partner, and such office shall be open during reasonable business hours for the inspection and examination by any Limited Partner and its agents, all of whom shall have the right to make copies thereof and of any correspondence or other materials relating to or arising out of the Business of the Partnership.

13.4. The General Partner shall cause to be prepared the tax returns of the Partnership and a balance sheet and a report of the receipts, disbursements, net profits and losses and cash flow of the Partnership and the share of the net profits and losses of each of the Partners for such fiscal year. The General Partner shall, promptly upon receipt of such balance sheet and report, transmit a copy thereof to each Limited Partner. The Partnership may retain such firm of independent certified public accountants as the General Partner shall reasonably select.

13.5. All property of the Partnership shall be held in the name of the Partnership or in the names of one or more nominees designated by the General Partner.

13.6. The funds of the Partnership shall be deposited in the name of the Partnership in such bank account or accounts as shall be designated by the General Partner or invested in such short-term obligations as the General Partner shall determine.

13.7. Jesse Shemesh, as Managing Member of the General Partner shall be the "tax matters" Partner for purposes of the Internal Revenue Code.

## ARTICLE XIV
## INDEMNIFICATION OF THE GENERAL PARTNER

14.1. To the fullest extent permitted by law, the General Partner and all officers, directors, members, agents and employees of any General Partner (individually, an "Indemnitee") shall be indemnified and held harmless by the Partnership from and against any and all losses, claims, damages, liabilities, whether joint or several, expenses (including legal fees and expenses), judgments, fines, settlements and other amounts arising from any and all claims, demands, actions, suits or proceedings, civil, criminal, administrative or investigative, in which the Indemnitee may be involved, or threatened to be involved, as a party or otherwise, by reason of its status as a General Partner or an officer, director, agent or employee of a General Partner, regardless of whether the Indemnitee continues to be a General Partner or an officer, director, member, agent or employee of a General Partner at the time any such liability or expense is paid or incurred if (a) the Indemnitee acted in good faith and any manner it reasonably believed to be in, or not opposed to, the best interests of the Partnership and, with respect to any criminal proceeding, had no reasonable cause to believe its conduct was unlawful, and (b) the Indemnitee's conduct did not constitute gross negligence or willful or wanton misconduct. The termination of any action, suit or proceeding by judgment, order, settlement, conviction or upon a plea of nolo contendere, or its equivalent, shall not, of itself, create a presumption that the Indemnitee acted in a manner contrary to that specified in (a) or (b) above.

14.2. Any indemnification under this Article XIV, unless ordered by a court, shall be made by the Partnership only as authorized in the specific case and only upon a determination (a) by the General Partner if none of the General Partner(s) is a named defendant or respondent in the proceeding, or (b) by the Limited Partners by the affirmative vote of those holding at least 51% of the Profit and Loss Percentages, or (c) if neither (a) nor (b) hereof is applicable, in the opinion of independent legal counsel that indemnification of the Indemnitee is proper in the circumstances because the Indemnitee has met the applicable standard of conduct set forth in paragraph 14.1 above.

14.3. To the fullest extent permitted by law, expenses incurred by an Indemnitee in defending any claim, demand, action, suit or proceeding subject to this Article XIV shall, from time to time, be advanced by the Partnership prior to the final disposition of such claim, demand, action, suit or proceeding upon the receipt by the Partnership of an undertaking by or on behalf of the Indemnitee to repay such amount unless it shall be determined that such person is entitled to be indemnified as authorized in this Article XIV.

14.4. The indemnification of this Article XIV shall be in addition to any other rights of

Case ID: 190901274

an Indemnitee under any agreement, pursuant to any vote of the Partners, as a matter of law or otherwise, both as to action in the Indemnitee's capacity as a General Partner or as an officer, director, member, agent or employee of a General Partner, and shall continue as to an Indemnitee who has ceased to serve in such capacity and shall inure to the benefit of the heirs, successors, assigns and personal representatives of the Indemnitee.

14.5. Any indemnification under this Article XIV shall be satisfied solely out of the assets of the Partnership. In no event may an Indemnitee subject any Limited Partner to personal liability by reason of these indemnification provisions. An Indemnitee shall not be denied indemnification under this Article XIV because the Indemnitee had an interest in the transaction with respect to which the indemnification applies if the transaction was otherwise permitted by the terms of this Agreement.

ARTICLE XV
GENERAL

15.1. Each Partner represents and warrants to each other Partner and the Partnership that, except as heretofore disclosed to and approved by the General Partner, (i) its Partnership Interest is being acquired solely for its own account, for investment, and is not being purchased with a view to or for the resale, distribution, subdivision or fractionalization thereof, (ii) it has no contract, undertaking, understanding, agreement or arrangement, formal or informal, with any person to sell, transfer or pledge all or any portion of its interest in the Partnership, and (iii) it has no present plans to enter into any such contract, undertaking, understanding, agreement or arrangement.

15.2. Whenever any notice, request or consent is required or permitted to be given hereunder, such notice, request or consent shall be in writing, signed by or on behalf of the person giving the notice, and shall be deemed to have been given when delivered by personal delivery or five days after it was mailed by registered mail, postage prepaid, addressed to the Partner to whom such notice or request is to be given at its address set forth on Schedule A hereto, or at such other address as shall be stated on a notice similarly given to the Partnership and all the Partners.

15.3. Except as herein otherwise provided to the contrary, this Agreement shall be binding upon and inure to the benefit of the parties hereto, their personal representatives, successors and assigns. None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditor of the Partnership.

15.4. Each Limited Partner hereby constitutes and appoints the General Partner as his true and lawful attorney-in-fact, to make, execute, sign, acknowledge, record or file with respect to the Partnership:

15.4.1. the Certificate of Limited Partnership, any amendment or supplement thereto required as a result of any amendment to this Agreement;

15.4.2. all instruments, documents or certificates which may be deemed necessary or desirable by the General Partner to effect the admission of a substitute Limited Partner in accordance with the terms hereof or the termination of the Partnership upon its

Case ID: 190901274

dissolution;

15.4.3. any fictitious name or similar certificate required by law to be filed on behalf of the Partnership; and

15.4.4. all such other instruments, documents and certificates which may from time to time be required by the laws of any jurisdiction, domestic or foreign, to effectuate, implement, continue and defend the valid and subsisting existence of the Partnership and its power to carry out its purposes as set forth in this Agreement; PROVIDED, HOWEVER, that the General Partner shall not have any authority to take any action as such attorney-in-fact which could in any way increase the liability of any Limited Partner beyond that expressly set forth herein.

15.5. This Agreement may not be modified or amended without (1) the written consent of Limited Partners holding at least 90% of the Profit and Loss Percentages and (2) the consent of the General Partner(s) holding at least one (1%) percent of Interest except that any modification or amendment affecting (i) the allocation of net profits and losses of the Partnership and distributions of cash or Partnership Property, or (ii) this Section 15.5, shall require the written consent of all the Partners. No amendment, modification or waiver of this Agreement or any part hereof and no notice or consent required or permitted to be given pursuant to the terms of this Agreement shall be valid or effective unless in writing and signed by the party or parties sought to be charged therewith; and no waiver of any breach of condition of this Agreement shall be deemed to be a waiver of any other subsequent breach of conditions, whether of like or different nature.

15.6. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa. For the purpose of this Agreement:

15.6.1. The term "person" shall include any individual, corporation, partnership, association, trust, joint stock company or unincorporated organization;

15.6.2. The "bankruptcy" of the General Partner or of a Limited Partner shall be deemed to have occurred upon the happening of any of the following: (i) the filing of an application by such person for, or a consent to, the appointment of a trustee of its or his assets; (ii) the filing by such person of a voluntary petition in bankruptcy or the seeking of relief under Title 11 of the United States Code, as now constituted or hereafter amended, or the filing of a pleading in any court of record admitting in writing its or his inability to pay its or his debts as they come due; (iii) the failure of such person to pay its or his debts as such debts become due; (iv) the making by such person of a general assignment for the benefit of creditors; (v) the filing by such person of an answer admitting the material allegations of, or its or his consenting to, or defaulting in answering, a bankruptcy petition filed against it to him in any bankruptcy proceeding or petition seeking relief under Title 11 of the United States Code, as now constituted or as hereafter amended; or (vi) the entry of an order, judgment or decree by any court of competent jurisdiction adjudicating such person a bankrupt or for relief in respect of such person or appointing a trustee of its or his assets, and such order, judgment or decree continued unstayed and in effect for any period of 60 consecutive days.

Case ID: 190901274

15.7. This Agreement shall be construed in accordance with and governed by the laws and decisions of the Commonwealth of Pennsylvania without regard to the conflicts of law principles thereof.

15.8. This Agreement constitutes the entire agreement among the parties pertaining to the subject matter hereof and supersedes all prior and contemporaneous agreements and understandings of the parties in connection therewith. No covenant, representation or condition not expressed in this Agreement shall affect, or be effective to interpret, change or restrict, the express provisions of this Agreement.

15.9. This Agreement may be executed in counterparts which when taken together shall constitute one agreement binding on all the parties notwithstanding that all the parties are not signatories to the same counterpart.

ARTICLE XVI
SPE PROVISIONS

16.1. The Partnership shall be a "Single Purpose Entity" as long as any Loan(s) are outstanding and, until all of its obligations have been paid pursuant to the Loan, the partnership shall not and will not:

(i) engage in any business or activity other than the ownership, operation and maintenance of the Property, and activities incidental thereto;

(ii) acquire or own any assets other than (A) the Property, and (B) such incidental Personal Property as may be necessary for the operation of the Property;

(iii) merge into or consolidate with any Person, or dissolve, terminate, liquidate in whole or in part, transfer or otherwise dispose of all or substantially all of its assets or change its legal structure;

(iv) fail to observe all organizational formalities, or fail to preserve its existence as an entity duly organized, validly existing and in good standing (if applicable) under the applicable Legal Requirements of the jurisdiction of its organization or formation, or amend, modify, terminate or fail to comply with the provisions of its organizational documents;

(v) own any subsidiary, or make any investment in, any Person;

(vi) commingle its assets with the assets of any other Person, or permit any Affiliate or constituent party independent access to its bank accounts;

(vii) incur any debt, secured or unsecured, direct or contingent (including guaranteeing any obligation), other than (A) the Debt, (B) trade and operational indebtedness incurred in the ordinary course of business with trade creditors, provided such indebtedness is (1) unsecured, (2) not evidenced by a note, (3) on commercially reasonable terms and conditions, and (4) due not more than sixty (60) days past the date incurred and paid on or prior to such date, and/or (C) financing leases and purchase money indebtedness incurred in the ordinary course of business relating to Personal Property on commercially reasonable terms and conditions; provided however, the aggregate amount of the indebtedness described in (B) and (C) shall not

exceed at any time three percent (3%) of the outstanding principal amount of the Note;

(viii) fail to maintain its records, books of account, bank accounts, financial statements, accounting records and other entity documents separate and apart from those of any other Person; except that Borrower's financial position, assets, liabilities, net worth and operating results may be included in the consolidated financial statements of an Affiliate, provided that such consolidated financial statements contain a footnote indicating that Borrower is a separate legal entity and that it maintains separate books and records;

(ix) enter into any contract or agreement with any general partner, member, shareholder, principal, guarantor of the obligations of Borrower, or any Affiliate of the foregoing, except upon terms and conditions that are intrinsically fair, commercially reasonable and substantially similar to those that would be available on an arm's-length basis with unaffiliated third parties;

(x) maintain its assets in such a manner that it will be costly or difficult to segregate, ascertain or identify its individual assets from those of any other Person;

(xi) assume or guaranty the debts of any other Person, hold itself out to be responsible for the debts of any other Person, or otherwise pledge its assets for the benefit of any other Person or hold out its credit as being available to satisfy the obligations of any other Person;

(xii) make any loans or advances to any Person;

(xiii) fail to file its own tax returns or files a consolidated federal income tax return with any Person (unless prohibited or required, as the case may be, by applicable Legal Requirements);

(xiv) fail either to hold itself out to the public as a legal entity separate and distinct from any other Person or to conduct its business solely in its own name or fail to correct any known misunderstanding regarding its separate identity;

(xv) fail to maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations;

(xvi) without the unanimous written consent of all of its partners, (a) file or consent to the filing of any petition, either voluntary or involuntary, to take advantage of any Creditors Rights Laws, (b) seek or consent to the appointment of a receiver, liquidator or any similar official, (c) take any action that might cause such entity to become insolvent, or (d) make an assignment for the benefit of creditors;

(xvii) fail to allocate shared expenses (including, without limitation, shared office space and services performed by an employee of an Affiliate) among the Persons sharing such expenses and to use separate stationery, invoices and checks;

(xviii) fail to remain solvent or pay its own liabilities (including, without limitation, salaries of its own employees) only from its own funds, provided that there are sufficient funds from the operation of the Property to do so;

Case ID: 190901274

(xix) acquire obligations or securities of its partners, members, shareholders or other affiliates, as applicable;

(xx) violate or cause to be violated the assumptions made with respect to Borrower and its principals in any opinion letter pertaining to substantive consolidation delivered to Lender in connection with the Loan; or

(xxi) fail to maintain a sufficient number of employees in light of its contemplated business operations.

***

**[SIGNATURES TO FOLLOW ON NEXT PAGE]**

Case ID: 190901274

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement as of the day and year first above written.

**GENERAL PARTNER:**
**1326 N Mascher St Partners GP, LLC**

BY: _____

Name: _____

Title: MEMBER, 1326 N Mascher St GP LLC, General Partner.

**LIMITED PARTNER:**
**ASAM, LLC**

BY: _____

Name:

Title:

Case ID: 190901274

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement as of the day and year first above written.

GENERAL PARTNER:
1326 N Mascher St Partners GP, LLC

BY: _____
Name:
Title:

LIMITED PARTNER:
ASAM, LLC

BY: *Vicken Aykanian*
Name: *Vicken Aykanian*
Title: *Managing member*

Case ID: 190901274



Filed and Attested by the
Office of Judicial Records
23 _____ pm

# EXHIBIT C

Case ID: 190901274

# TINOVSKY LAW FIRM PC

FIVE NESHAMINY INTERPLEX
SUITE 205
TREVOSE, PA 19053
215.589.6960 PHONE
215.701.4987 FAX
WWW.TINOVSKY.COM

VLAD TINOVSKY, ESQUIRE
215.568.8862 Direct
vtinovsky@tinovsky.com

August 9, 2019

**Via First Class Mail, Certified Mail and Email**

1840 S Camac St Partners LP
c/o 1840 S Camac St Partners GP LLC, Jing Pu and Robert Muelmesster
230 South Broad Street, 17th Floor
Philadelphia, PA 19102

Jing Pu
134 S. Borrow Place
Princeton, NJ 08504

Robert Muelmesster
1128 Hall Street
Philadelphia, PA 19125

**RE:    Asam, LLC's Demand for Inspection of Books, Records and Information**

Dear Messrs. Pu and Muelmesster:

This firm represents Asam, LLC ("Asam" or "Limited Partner"), a limited partner of 1840 S Camac St Partners LP (the "Company").

## 1.   Demand For Inspection

Asam hereby makes demand, pursuant to its rights in the Company and applicable law, to access, inspect and make copies or extracts (as needed) of the documents, instruments, information and data relating to the Company (collectively, the "Books and Records") set forth on Exhibit A hereto.

Asam's purpose in demanding these Books and Records is to determine: (1) the value of Asam's interest in the Company, (2) the sources of revenue, expenses, profits and/or losses of the Company, (3) the Company's assets and liabilities, including, without limitation, all leasing, sales and/or other proceeds generated by the Company and the use, custody and control of such proceeds, (4) whether and/or to what extent the General Partner, its affiliates and their co-conspirators have acted improperly and/or unlawfully towards the Company, Asam and/or others associated with the Company and/or its business activities, and (5) whether and/or to what extent the Company and its business activities have been operated and managed improperly and/or illegally.

Case ID: 190901274

# TINOVSKY LAW FIRM ᴾᶜ

Inspection Demand re: 1840 S. Camac St
Partners LP
September 9, 2019
Page 2

---

Asam must be granted access (at a reasonable, mutually agreeable time) at the Company's office or electronically (if approved by Asam) to the Books and Records by no later than **5:00 p.m. on Monday, September 16, 2019.**

If you dispute Asam's right to any of the items requested hereby, then all items you believe Asam is entitled to receive be made available to me by the aforementioned deadline referenced above, and that you provide a written explanation about your failure to produce any requested items by no later than **5:00 p.m. on Monday, September 16, 2019.**

Asam plans to attend the inspection with or through its agent(s) and/or advisor(s), including, without limitation, myself as its legal counsel.

## 2. Demand For Preservation

Given the likelihood of imminent litigation, you are hereby requested to preserve any and all Documents and Data (as defined below) relating to (i) the Company, its business, its partners and their affiliates and others with whom the Company has or plans to conduct business, and (ii) the subject matter of this demand, which are in your and/or your affiliates' or agents' possession, custody and/or control. The purpose of this request is to ensure that no evidence, or potential evidence, is lost, altered, or destroyed.

Please note that, for purposes hereof, "Documents and Data" includes, but is not limited to, the following: (i) all agreements, contracts, instruments and other documents and information; (ii) all letters, emails, text messages, instant messages, social media posts or messages, and any and all other tangible and/or electronic communications which you sent to or received from any person or entity; (iii) all electronically stored information and data, including, without limitation, all metadata; (iv) all data on computers, phones, tablets and other devices, servers, off-line data storage locations, and online and/or cloud storage locations like Google Drive, Dropbox, OneDrive, etc., including, without limitation, all access and other logs used to process electronic data thereon; (v) all video, photo, audio, and/or other files, as well as file fragments; (vi) all work product (including drafts and fragments thereof) created by you or any other person or entity (including lawyers, accountants, engineers, architects, construction contractors and any other goods or service providers) relating to the Company, its business, its partners, and/or anyone with whom the Company and/or its affiliates has conducted business; (vii) all on-line and off-line data storage on servers and other storage locations; and (viii) all hard copy documents, recordings, videotapes, photographs, audiotapes, e-mails, instant messages, social media content, word processing documents, spreadsheets, databases, calendars, telephone logs, Internet usage files, and all other hard copy and electronically stored documents, files, data and other information maintained created, received, and/or maintained by any person or entity on computer systems or otherwise in connection with the foregoing.

Sources of the Documents and Data may include, but are not limited to, all hard copy files, computer hard drives, removable media (e.g., CDs, DVDs and flash drives), desktop/laptop/tablets/phones or

TINOVSKY LAW FIRM PC

Inspection Demand re: 1840 S. Camac St
Partners LP
September 9, 2019
Page 3

other devices and locations where hard copy and electronic data is stored. Keep in mind that any of the above-mentioned sources of relevant Documents and Data may include computers, phones and other you or your staff use or have access to at work, home or other locations.

In order to comply with your legal obligations, you must immediately preserve not only all existing paper copies of Documents and Data, including drafts and revisions, but also all electronically stored Documents and Data, including drafts and revisions, in its existing electronic format with all metadata. In order to comply with this request, you should immediately suspend deletion, overwriting, or any other possible destruction or alteration of relevant Documents and Data, including your current document destruction policy and/or automatic deletion function on your computer or other devices. You should also immediately archive and preserve any and all emails and other Documents and Data related to the matters set forth herein. Electronically stored data is an important and irreplaceable source of discovery and/or evidence, and you must take every reasonable step to preserve the Documents and Data until further notice from this office.

Even where a paper copy exists, Asam may still seek all Documents and Data in their electronic form along with information about those Documents and Data contained on the media. Asam may also seek paper printouts of only those documents that contain unique information after they were printed out (such as paper documents containing handwriting, signatures, marginalia, drawings, annotations, highlighting and redactions) along with any paper documents for which no corresponding electronic files exist.

In order to assure that your obligation to preserve Documents and Data will be met, please forward a copy of this letter to all persons and entities with custodial responsibility for the items referred to in this letter, including, without limitation, Jing Pu, Robert Muelmeester, Nanjing Capital, Passyunk Loan Acq13 LLC and/or their affiliates and other co-conspirators. Failure to preserve Documents and Data could result in civil and/or criminal penalties.

Asam looks forward to your prompt response to this demand for inspection and preservation.

Very truly yours,

Vlad Tinovsky

CC:    Asam, LLC
       Edward J. Hayes, Esq.
       Antranig Garibian, Esq.

TINOVSKY LAW FIRM rc

Inspection Demand re: 1840 S. Caniac St
Partners LP
September 9, 2019
Page 4

---

## EXHIBIT A

### I.    DEFINITIONS AND INSTRUCTIONS

1.    _Definitions:_ The following terms used herein, whether or not capitalized, shall have the meanings ascribed to such terms set forth below unless the context requires otherwise:

a.    "Affiliate" means, with respect to any subject Person, (i) the spouse, parents, children, siblings, in-laws, ancestor or other relatives (whether by blood or adoption) of such subject Person (each, a "Family Member"), (ii) or a trust or other entity established for the benefit of such subject Person or for the benefit of a Family Member of such subject Person, and (iii) any Person that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with such subject Person. For the purpose of this definition, the term "control" shall include, without limitation, the direct or indirect beneficial or record ownership of 5% or more of the equity or voting interests by a Person in any other Person.

b.    "Document" or "documents" is used in the broadest sense possible and includes, without limitation, the following items, whether printed, recorded or reproduced by any mechanical process or written or produced by hand: papers; e-mails; books; letters; tangible things; records; correspondence; telegram; cables; telex messages; memoranda; damages; reports; notes; notations; work papers; financial records; communications; summaries; transcripts; records of conversations; interviews; meetings; telephone conversations or conferences; minutes; audio or videotapes; cassettes or disks; computer hard drives; software and source code; electronically stored information with metadata and other data or data compilations; statistical statements; graphs; charts; accounts; analytical records; reports or summaries of investigations; computerized records; data compilations from which information can be obtained; contents of social media and other electronically stored information related thereto; affidavits; statements; opinions; studies; analyses; estimates; projections; illustrations; tables; schedules; worksheets; proposals; contracts; agreements; lists; tabulations; business records; books of account; ledgers; journals; balance sheets; financial statements; accountant's statements; audits; bank statements; drafts; negotiable instruments; checks; receipts; invoices; purchase orders; bills; microfilms; photographs or negatives thereof. The word "document" or "documents" also includes both originals and copies containing or having attached to them any alterations, notes, comments or other material not appearing on the original or any other copies not containing such material, and shall include drafts, revisions of drafts and other preliminary material, from whatever source, underlying, supporting or used in preparation of any document.  The word "document" or "documents" further includes any file or other container holding, or which at any time held, any document as well as any writing or other communication which appears or appeared on, or affixed to, such file or other container.

c.    "Governmental Body" means any United States or foreign federal, state, provincial, local, municipal, or other government, or governmental or quasi-governmental

Case ID: 190901274

# TINOVSKY LAW FIRM ℗℃

Inspection Demand re; 1840 S. Camac St
Partners LP
September 9, 2019
Page 5

authority of any nature, or any Person performing or assisting in the performance of any duty or function of any of the foregoing Governmental Bodies.

    d.    "Legal Requirement" means any United States or foreign federal, state, provincial, local, municipal, or other law, statute, legislation, bill, act, enactment, constitution, resolution, proposition, initiative, canon, ordinance, code, edict, decree, proclamation, treaty, convention, rule, regulation, ruling, directive, guideline, or interpretation issued, enacted, adopted, passed, approved, ratified, endorsed, promulgated, made, entered, rendered, published or implemented by or under the authority of any Governmental Body or by the eligible voters of any jurisdiction.

    e.    "Person" shall refer to all natural persons, firms, associations, companies, organizations, partnerships, joint ventures, sole proprietorships, corporations, trustees, governmental agencies, governmental bodies, governmental officials, or other entities.

    f.    "Transaction" or "transactions" is used in the broadest sense possible and includes, without limitation, the following: (i) the act of transacting or the fact of transacted business, commercial or other activity between two or more persons, (ii) the act of obtaining or seeking to obtain any item or service for payment, exchange of value or benefit, without an exchange of value or benefit, or otherwise, and (iii) communication involving two or more persons that affects any or all those involved.

2.    <u>Instructions</u>.

    a.    The headings herein are for convenience only and shall have no effect on the interpretation or limitation of any provision hereof.

    b.    Whenever in the following paragraphs there is a request to produce documents, you are requested to produce all documents that are in your possession, custody or control or that of any of your agents or representatives, or that are reasonably obtainable from other sources.

    c.    Each request herein for a document or documents to be produced, whether memoranda, reports, letters, minutes, or other documents of any description, requires the production of the document in its entirety, without redaction or expurgation.

    d.    If any documents responsive to all or any part of any request for documents are not currently available, include a statement to that effect and furnish whatever documents are available. Include in your statement when such documents were most recently in your possession or subject to your control and what disposition was made of them, and identify each person currently in possession or control of such documents by name, job title, and last known business and home address. If any of such documents have been destroyed, state when and where such documents were destroyed, identify each person who directed that the documents be destroyed or who actually destroyed the documents by name, job title, and last known business

# TINOVSKY LAW FIRM PC

Inspection Demand re: 1840 S. Camac St
Partners LP
September 9, 2019
Page 6

---

and home address and state the reasons the documents were destroyed.

## II.  LIST OF REQUESTED BOOKS AND RECORDS (INCLUDING DOCUMENTS AND DATA)

1. **Organizational Documents.** All organizational documents relating to the Company, including, without limitation, copies of all partnership and related agreements, resolutions, consents, minutes, and all amendments thereto.

2. **Actions or Proceedings.** All documents and information relating to any past, present and/or threatened legal, administrative, regulatory and or other actions and/or proceedings involving the Company, the Company's business, and Company's current and former partners, employees, contractors, agents, representatives, affiliates and/or others with whom the Company conducted or planned to conduct business activities.

3. **Securities Marketing and Sale Documents.** All documents and information relating to the marketing and/or sale of any general partnership interests, limited partnership interests and or other securities relating to the Company, including, without limitation, all partnership interests sale agreements, project projections (financial and otherwise), correspondence relating to the sale of partnership interest, all materials and statements made or provided in connection with the marketing and/or sale and/or inducement to purchase any partnership interests and/or other equity securities relating to the Company and/or its business.

4. **Loans / Financing.** All documents and information relating to any loans and other financing relating to the Company and its business, including, without limitation, all loan applications and information furnished to a lender in connection with the loan or financing, loan agreements, promissory notes, guaranty agreements, security agreements, mortgages, U.C.C. financing statements or other documents relating to liens or security interests, principal and interest payment summaries, identities of all borrowers and other financially responsible parties, identities of all loan proceed recipients, documents evidencing the disbursement of any loan proceeds to any persons or entities and the basis for such disbursements, partnership notices or consents or resolutions relating to the approval of any loans or financings, the identities of all persons or entities involved in securing or complying with the loans or financings, etc.

5. **Goods and Services Providers.** All documents and information relating to any persons or entities providing any goods or services to, for or on behalf of the Company and its business, including, without limitation, all lawyers, accountants, architects, contractors, subcontractors, and others involved with the Company under its business. This request shall be deemed to include copies of all contracts, engagement letters, scopes of work, invoices, bills, payments, insurance policies,  insurance certificates, certificates naming the Company and others as additional insureds or loss payees, proof of a goods / services provider's licensing, proof of a goods / services provider's bonding, proof of insurance, documents relating to the general

Case ID: 190901274

# TINOVSKY LAW FIRM PC

Inspection Demand re: 1840 S. Camac St
Partners LP
September 9, 2019
Page 7

---

partner's solicitation of bids from goods or services providers and evaluation of goods or services providers and any remuneration or other thing of value provided to the general partner and/or its affiliates and/or others in connection with the inducement to award work to any goods or services provider, etc.

6. __Property Development and Commercialization.__ All documents and information relating to the acquisition, development, construction, marketing, leasing and/or sale of real estate by the Company and its other business activities, including, without limitation, purchase and sale agreements, commission agreements, broker agreements, contractor agreements, subcontractor agreements, permits, licenses, approvals, violation notices, documents relating to violation, claims from purchasers and others, notices of breach contracts or other rights, dispute documents, etc.

7. __Bank, Financial, Accounting and Tax Records.__ All documents and information relating to financial, accounting, tax and other business records or activities of the Company and its business, including, without limitation, QuickBooks and other accounting software and electronically stored data, bank statements, bank signature cards, credit card statements, identifies of credit card holders, wire transfer records, cash deposit and withdrawal records, financial statements, vouchers for expenses, full and accurate records of all transactions of the Company, reports of the receipts / disbursements / net profits / losses / cash flows of the Company and each partner, tax returns, documents relating to assets, documents relating to expenses, documents relating to liabilities, documents relating to loans, documents relating to capital contributions or distributions, documents relating to any draws or payments to partners or their affiliates, documents relating to cash / in-kind / other distributions, documents relating to notices or approvals of any draws / distributions / similar actions and transactions, documents underlying the preparation of any financial / accounting / tax records, notices or other documents received from taxing authorities, Governmental Bodies or any other persons or entities relating to the foregoing, etc.

8. __Claims, Disputes, Misconduct, Etc.__ All documents and information relating to any claims, causes of action, investigations, proceedings, litigations, lawsuits, arbitrations, demand for payment disputes and/or request for relief, etc. which relate in any way to the Company, its business and/or its partners, including, without limitation, (i) any negligence, gross negligence, recklessness, intentional misconduct, self-dealing or other unlawful conduct of any partner or their affiliates, and (ii) any claims against the Company, its business, its assets or its partners.

9. __Pu, Muelmesser, Jing Pu, Robert Muelmesster, Nanjing Capital, Passyunk Loan Acq13 LLC Etc. Documents / Information.__ All documents and information relating to Jing Pu, Robert Muelmesser, Nanjing Capital, Passyunk Loan Acq13 LLC and/or their affiliates which pertain in any way to Asam, the Company and/or the Company's business, including, without limitation, (i) all monies and other things of value provided to or received from the Company or any person or entity related to the Company and its business, (ii) the improper and/or

Case ID: 190901274

# TINOVSKY LAW FIRM ₊₀

Inspection Demand re: 1840 S. Cameo St
Partners LP
September 9, 2019
Page 8

clandestine acquisition and/or transfer (by assignment or otherwise) of any loans or related rights to which the Company, Asam or any of their related parties are a party or by which they are bound or where they are a borrower, guarantor or other financially responsible party, and (iii) any misconduct or unlawful conduct by any of the foregoing or their affiliates in connection with the Company and its business activities.

10. **Capital or Loan Calls / Requests.** All documents and information relating to any calls or requests for capital contributions, loans and/or other funding from any of the partners of the Company and/or their affiliates or any other person or entity, including, without limitation, the basis for any such calls or requests.

11. **Property Management and Commercialization.** All documents and information relating to the management of the business and activities of the Company by its general partner(s) and/or otherwise, including, without limitation, all documents relating to the supervision, custody and/or control exercised or required to be exercised by the general partner or others of the Company's business, operations and activities.

12. **Evidence of Wrongdoing.** All documents and information relating to any wrongdoing, improper conduct and/or illegal conduct by the general partner, its affiliates and/or any other persons or entities relating to the Company and its business.

13. **All Other Books and Records.** Any and all other books, records and documents relating to the Company and its business and all actions and transactions relating thereto, including, without limitation, all drafts, amendments, and modifications to the aforementioned Books and Records.

Case ID: 190901274

# TINOVSKY LAW FIRM PC

FIVE NESHAMINY INTERPLEX
SUITE 205
TREVOSE, PA 19053
215.568.6860 PHONE
215.701.4987 FAX
WWW.TINOVSKY.COM

VLAD TINOVSKY, ESQUIRE
215.568.6862 DIRECT
vtinovsky@tinovsky.com

August 9, 2019

**Via First Class Mail, Certified Mail and Email**

1326 N Mascher St Partners LP
c/o 1326 N Mascher St Partners GP LLC, Jing Pu and Robert Muelmesster
230 South Broad Street, 17th Floor
Philadelphia, PA 19102

Jing Pu
134 S. Borrow Place
Princeton, NJ 08504

Robert Muelmesster
1128 Hall Street
Philadelphia, PA 19125

RE:     **Asam, LLC's Demand for Inspection of Books, Records and Information**

Dear Messrs. Pu and Muelmesster:

This firm represents Asam, LLC ("Asam" or "Limited Partner"), a limited partner of 1326 N Mascher St Partners LP (the "Company").

1. **Demand For Inspection**

Asam hereby makes demand, pursuant to its rights in the Company and applicable law, to access, inspect and make copies or extracts (as needed) of the documents, instruments, information and data relating to the Company (collectively, the "Books and Records") set forth on Exhibit A hereto.

Asam's purpose in demanding these Books and Records is to determine: (1) the value of Asam's interest in the Company, (2) the sources of revenue, expenses, profits and/or losses of the Company, (3) the Company's assets and liabilities, including, without limitation, all leasing, sales and/or other proceeds generated by the Company and the use, custody and control of such proceeds, (4) whether and/or to what extent the General Partner, its affiliates and their co-conspirators have acted improperly and/or unlawfully towards the Company, Asam and/or others associated with the Company and/or its business activities, and (5) whether and/or to what extent the Company and its business activities have been operated and managed improperly and/or illegally.

Case ID: 190901274

TINOVSKY LAW FIRM PC

Inspection Demand re: 1326 N Mascher St
Partners LP
September 9, 2019
Page 2

Asam must be granted access (at a reasonable, mutually agreeable time) at the Company's office or electronically (if approved by Asam) to the Books and Records by no later than **5:00 p.m. on Monday, September 16, 2019.**

If you dispute Asam's right to any of the items requested hereby, then all items you believe Asam is entitled to receive be made available to me by the aforementioned deadline referenced above, and that you provide a written explanation about your failure to produce any requested items by no later than **5:00 p.m. on Monday, September 16, 2019.**

Asam plans to attend the inspection with or through its agent(s) and/or advisor(s), including, without limitation, myself as its legal counsel.

2. **Demand For Preservation**

Given the likelihood of imminent litigation, you are hereby requested to preserve any and all Documents and Data (as defined below) relating to (i) the Company, its business, its partners and their affiliates and others with whom the Company has or plans to conduct business, and (ii) the subject matter of this demand, which are in your and/or your affiliates' or agents' possession, custody and/or control. The purpose of this request is to ensure that no evidence, or potential evidence, is lost, altered, or destroyed.

Please note that, for purposes hereof, "Documents and Data" includes, but is not limited to, the following: (i) all agreements, contracts, instruments and other documents and information; (ii) all letters, emails, text messages, instant messages, social media posts or messages, and any and all other tangible and/or electronic communications which you sent to or received from any person or entity; (iii) all electronically stored information and data, including, without limitation, all metadata; (iv) all data on computers, phones, tablets and other devices, servers, off-line data storage locations, and online and/or cloud storage locations like Google Drive, Dropbox, OneDrive, etc., including, without limitation, all access and other logs used to process electronic data thereon; (v) all video, photo, audio, and/or other files, as well as file fragments; (vi) all work product (including drafts and fragments thereof) created by you or any other person or entity (including lawyers, accountants, engineers, architects, construction contractors and any other goods or service providers) relating to the Company, its business, its partners, and/or anyone with whom the Company and/or its affiliates has conducted business; (vii) all on-line and off-line data storage on servers and other storage locations; and (viii) all hard copy documents, recordings, videotapes, photographs, audiotapes, e-mails, instant messages, social media content, word processing documents, spreadsheets, databases, calendars, telephone logs, Internet usage files, and all other hard copy and electronically stored documents, files, data and other information maintained created, received, and/or maintained by any person or entity on computer systems or otherwise in connection with the foregoing.

Sources of the Documents and Data may include, but are not limited to, all hard copy files, computer hard drives, removable media (e.g., CDs, DVDs and flash drives), desktop/laptop/tablets/phones or

TINOVSKY LAW FIRM ℗

Inspection Demand re: 1326 N Mascher St
Partners LP
September 9, 2019
Page 3

other devices and locations where hard copy and electronic data is stored. Keep in mind that any of the
above-mentioned sources of relevant Documents and Data may include computers, phones and other
you or your staff use or have access to at work, home or other locations.

In order to comply with your legal obligations, you must immediately preserve not only all existing
paper copies of Documents and Data, including drafts and revisions, but also all electronically stored
Documents and Data, including drafts and revisions, in its existing electronic format with all metadata.
In order to comply with this request, you should immediately suspend deletion, overwriting, or any
other possible destruction or alteration of relevant Documents and Data, including your current
document destruction policy and/or automatic deletion function on your computer or other devices.
You should also immediately archive and preserve any and all emails and other Documents and Data
related to the matters set forth herein. Electronically stored data is an important and irreplaceable
source of discovery and/or evidence, and you must take every reasonable step to preserve the
Documents and Data until further notice from this office.

Even where a paper copy exists, Asam may still seek all Documents and Data in their electronic form
along with information about those Documents and Data contained on the media. Asam may also seek
paper printouts of only those documents that contain unique information after they were printed out
(such as paper documents containing handwriting, signatures, marginalia, drawings, annotations,
highlighting and redactions) along with any paper documents for which no corresponding electronic
files exist.

In order to assure that your obligation to preserve Documents and Data will be met, please forward a
copy of this letter to all persons and entities with custodial responsibility for the items referred to in
this letter, including, without limitation, Jing Pu, Robert Muelmesster, Nanjing Capital, and/or their
affiliates and other co-conspirators. Failure to preserve Documents and Data could result in civil
and/or criminal penalties.

Asam looks forward to your prompt response to this demand for inspection and preservation.

Very truly yours,

Vlad Tinovsky

CC:   Asam, LLC
      Edward J. Hayes, Esq.
      Antranig Garibian, Esq.

Case ID: 190901274

TINOVSKY LAW FIRM PC

Inspection Demand re: 1326 N Mascher St
Partners LP
September 9, 2019
Page 4

---

## EXHIBIT A

### I.   DEFINITIONS AND INSTRUCTIONS

1.   Definitions. The following terms used herein, whether or not capitalized, shall have the meanings ascribed to such terms set forth below unless the context requires otherwise:

    a.   "Affiliate" means, with respect to any subject Person, (i) the spouse, parents, children, siblings, in-laws, ancestor or other relatives (whether by blood or adoption) of such subject Person (each, a "Family Member"), (ii) or a trust or other entity established for the benefit of such subject Person or for the benefit of a Family Member of such subject Person, and (iii) any Person that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with such subject Person. For the purpose of this definition, the term "control" shall include, without limitation, the direct or indirect beneficial or record ownership of 5% or more of the equity or voting interests by a Person in any other Person.

    b.   "Document" or "documents" is used in the broadest sense possible and includes, without limitation, the following items, whether printed, recorded or reproduced by any mechanical process or written or produced by hand; papers; e-mails; books; letters; tangible things; records; correspondence; telegram; cables; telex messages; memoranda; damages; reports; notes; notations; work papers; financial records; communications; summaries; transcripts; records of conversations; interviews; meetings; telephone conversations or conferences; minutes; audio or videotapes; cassettes or disks; computer hard drives; software and source code; electronically stored information with metadata and other data or data compilations; statistical statements; graphs; charts; accounts; analytical records; reports or summaries of investigations; computerized records; data compilations from which information can be obtained; contents of social media and other electronically stored information related thereto; affidavits; statements; opinions; studies; analyses; estimates; projections; illustrations; tables; schedules; worksheets; proposals; contracts; agreements; lists; tabulations; business records; books of account; ledgers; journals; balance sheets; financial statements; accountant's statements; audits; bank statements; drafts; negotiable instruments; checks; receipts; invoices; purchase orders; bills; microfilms; photographs or negatives thereof. The word "document" or "documents" also includes both originals and copies containing or having attached to them any alterations, notes, comments or other material not appearing on the original or any other copies not containing such material, and shall include drafts, revisions of drafts and other preliminary material, from whatever source, underlying, supporting or used in preparation of any document. The word "document" or "documents" further includes any file or other container holding, or which at any time held, any document as well as any writing or other communication which appears or appeared on, or affixed to, such file or other container.

    c.   "Governmental Body" means any United States or foreign federal, state, provincial, local, municipal, or other government, or governmental or quasi-governmental

# TINOVSKY LAW FIRM PC

Inspection Demand re: 1326 N Mascher St
Partners LP
September 9, 2019
Page 5

authority of any nature, or any Person performing or assisting in the performance of any duty or function of any of the foregoing Governmental Bodies.

     d.    "Legal Requirement" means any United States or foreign federal, state, provincial, local, municipal, or other law, statute, legislation, bill, act, enactment, constitution, resolution, proposition, initiative, canon, ordinance, code, edict, decree, proclamation, treaty, convention, rule, regulation, ruling, directive, guideline, or interpretation issued, enacted, adopted, passed, approved, ratified, endorsed, promulgated, made, entered, rendered, published or implemented by or under the authority of any Governmental Body or by the eligible voters of any jurisdiction.

     e.    "Person" shall refer to all natural persons, firms, associations, companies, organizations, partnerships, joint ventures, sole proprietorships, corporations, trustees, governmental agencies, governmental bodies, governmental officials, or other entities.

     f.    "Transaction" or "transactions" is used in the broadest sense possible and includes, without limitation, the following: (i) the act of transacting or the fact of transacted business, commercial or other activity between two or more persons, (ii) the act of obtaining or seeking to obtain any item or service for payment, exchange of value or benefit, without an exchange of value or benefit, or otherwise, and (iii) communication involving two or more persons that affects any or all those involved.

2.    <u>Instructions</u>.

     a.    The headings herein are for convenience only and shall have no effect on the interpretation or limitation of any provision hereof.

     b.    Whenever in the following paragraphs there is a request to produce documents, you are requested to produce all documents that are in your possession, custody or control or that of any of your agents or representatives, or that are reasonably obtainable from other sources.

     c.    Each request herein for a document or documents to be produced, whether memoranda, reports, letters, minutes, or other documents of any description, requires the production of the document in its entirety, without redaction or expurgation.

     d.    If any documents responsive to all or any part of any request for documents are not currently available, include a statement to that effect and furnish whatever documents are available. Include in your statement when such documents were most recently in your possession or subject to your control and what disposition was made of them, and identify each person currently in possession or control of such documents by name, job title, and last known business and home address. If any of such documents have been destroyed, state when and where such documents were destroyed, identify each person who directed that the documents be destroyed or who actually destroyed the documents by name, job title, and last known business

**TINOVSKY LAW FIRM** PC

Inspection Demand re: 1326 N Mascher St
Partners LP
September 9, 2019
Page 6

and home address and state the reasons the documents were destroyed.

**II.     LIST OF REQUESTED BOOKS AND RECORDS (INCLUDING DOCUMENTS AND DATA)**

1.     Organizational Documents. All organizational documents relating to the Company, including, without limitation, copies of all partnership and related agreements, resolutions, consents, minutes, and all amendments thereto.

2.     Actions or Proceedings. All documents and information relating to any past, present and/or threatened legal, administrative, regulatory and or other actions and/or proceedings involving the Company, the Company's business, and Company's current and former partners, employees, contractors, agents, representatives, affiliates and/or others with whom the Company conducted or planned to conduct business activities.

3.     Securities Marketing and Sale Documents. All documents and information relating to the marketing and/or sale of any general partnership interests, limited partnership interests and or other securities relating to the Company, including, without limitation, all partnership interests sale agreements, project projections (financial and otherwise), correspondence relating to the sale of partnership interest, all materials and statements made or provided in connection with the marketing and/or sale and/or inducement to purchase any partnership interests and/or other equity securities relating to the Company and/or its business.

4.     Loans / Financing. All documents and information relating to any loans and other financing relating to the Company and its business, including, without limitation, all loan applications and information furnished to a lender in connection with the loan or financing, loan agreements, promissory notes, guaranty agreements, security agreements, mortgages, U.C.C. financing statements or other documents relating to liens or security interests, principal and interest payment summaries, identities of all borrowers and other financially responsible parties, identities of all loan proceed recipients, documents evidencing the disbursement of any loan proceeds to any persons or entities and the basis for such disbursements, partnership notices or consents or resolutions relating to the approval of any loans or financings, the identities of all persons or entities involved in securing or complying with the loans or financings, etc.

5.     Goods and Services Providers. All documents and information relating to any persons or entities providing any goods or services to, for or on behalf of the Company and its business, including, without limitation, all lawyers, accountants, architects, contractors, subcontractors, and others involved with the Company under its business. This request shall be deemed to include copies of all contracts, engagement letters, scopes of work, invoices, bills, payments, insurance policies, insurance certificates, certificates naming the Company and others as additional insureds or loss payees, proof of a goods / services provider's licensing, proof of a goods / services provider's bonding, proof of insurance, documents relating to the general

Case ID: 190901274

**TINOVSKY LAW FIRM** PC

Inspection Demand re: 1326 N Mascher St
Partners LP
September 9, 2019
Page 7

_____

partner's solicitation of bids from goods or services providers and evaluation of goods or services providers and any remuneration or other thing of value provided to the general partner and/or its affiliates and/or others in connection with the inducement to award work to any goods or services provider, etc.

6.  Property Development and Commercialization. All documents and information relating to the acquisition, development, construction, marketing, leasing and/or sale of real estate by the Company and its other business activities, including, without limitation, purchase and sale agreements, commission agreements, broker agreements, contractor agreements, subcontractor agreements, permits, licenses, approvals, violation notices, documents relating to violation, claims from purchasers and others, notices of breach contracts or other rights, dispute documents, etc.

7.  Bank, Financial, Accounting and Tax Records. All documents and information relating to financial, accounting, tax and other business records or activities of the Company and its business, including, without limitation, QuickBooks and other accounting software and electronically stored data, bank statements, bank signature cards, credit card statements, identifies of credit card holders, wire transfer records, cash deposit and withdrawal records, financial statements, vouchers for expenses, full and accurate records of all transactions of the Company, reports of the receipts / disbursements / net profits / losses / cash flows of the Company and each partner, tax returns, documents relating to assets, documents relating to expenses, documents relating to liabilities, documents relating to loans, documents relating to capital contributions or distributions, documents relating to any draws or payments to partners or their affiliates, documents relating to cash / in-kind / other distributions, documents relating to notices or approvals of any draws / distributions / similar actions and transactions, documents underlying the preparation of any financial / accounting / tax records, notices or other documents received from taxing authorities, Governmental Bodies or any other persons or entities relating to the foregoing, etc.

8.  Claims, Disputes, Misconduct, Etc. All documents and information relating to any claims, causes of action, investigations, proceedings, litigations, lawsuits, arbitrations, demand for payment disputes and/or request for relief, etc. which relate in any way to the Company, its business and/or its partners, including, without limitation, (i) any negligence, gross negligence, recklessness, intentional misconduct, self-dealing or other unlawful conduct of any partner or their affiliates, and (ii) any claims against the Company, its business, its assets or its partners.

9.  Pu, Muelmesser, Jing Pu, Robert Muelmesser, Nanjing Capital, Etc. Documents / Information. All documents and information relating to Jing Pu, Robert Muelmesser, Nanjing Capital and/or their affiliates which pertain in any way to Asam, the Company and/or the Company's business, including, without limitation, (i) all monies and other things of value provided to or received from the Company or any person or entity related to the Company and its business, (ii) the improper acquisition and/or transfer of any rights or claims relating to

**TINOVSKY LAW FIRM** ᴾᴸ

Inspection Demand re: 1326 N Mascher St
Partners LP
September 9, 2019
Page 8

_____

Company, Asam or any of their related parties, and (iii) any misconduct or unlawful conduct by any of the foregoing or their affiliates in connection with the Company and its business activities.

10. <u>Capital or Loan Calls / Requests</u>. All documents and information relating to any calls or requests for capital contributions, loans and/or other funding from any of the partners of the Company and/or their affiliates or any other person or entity, including, without limitation, the basis for any such calls or requests.

11. <u>Property Management and Commercialization</u>. All documents and information relating to the management of the business and activities of the Company by its general partner(s) and/or otherwise, including, without limitation, all documents relating to the supervision, custody and/or control exercised or required to be exercised by the general partner or others of the Company's business, operations and activities.

12. <u>Evidence of Wrongdoing</u>. All documents and information relating to any wrongdoing, improper conduct and/or illegal conduct by the general partner, its affiliates and/or any other persons or entities relating to the Company and its business.

13. <u>All Other Books and Records</u>. Any and all other books, records and documents relating to the Company and its business and all actions and transactions relating thereto, including, without limitation, all drafts, amendments, and modifications to the aforementioned Books and Records.

Case ID: 190901274

# Exhibit "C"

(Notice of Removal)

**WILENTZ, GOLDMAN & SPITZER P.A.**
Daniel S. Bernheim 3d, Esquire
Identification Nos. 32736
Two Penn Center, Suite 910                    Attorneys for Defendants
Philadelphia, PA 19102
215-636-4468
dbernheim@wilentz.com

------------------------------------------------------------------
                                                    :
ASAM, LLC                                           :
              Plaintiff,                            :     COURT OF COMMON PLEAS
                                                    :     PHILADELPHIA COUNTY
v.                                                  :
                                                    :     SEPTEMBER TERM, 2019
JING PU, ROBERT MEULMEESTER, NANJING                :     NO. 001274
CAPITAL MANAGEMENT, LLC,                            :
1840 S CAMAC ST PARTNERS GP LLC,                    :     COMMERCE PROGRAM
1326 N MASCHER ST PARTNERS GP LLC,                  :
REVIVAL MANAGEMENT LLC,                             :
PASSYUNK LOAN ACQ13 LLC,                            :
EDGEWISE REALTY, LLC, and                           :
JOHN/JANE/ENTITY DOE DEFENDANTS 1-10                :
              Defendants.                           :
                                                    :
------------------------------------------------------------------

### DEFENDANT'S NOTICE OF CONSENT TO REMOVAL

Defendants 1840 S Camac St Partners GP LLC, 1326 N Mascher St Partners GP LLC,

Revival Management LLC, Passyunk Loan ACQ13 LLC, hereby file this consent to removal

under 28 U.S.C. § 1446(b).  In support of this consent, defendants state as follows:

1.       The plaintiff is ASAM, LLC and the consenting defendants are 1840 S Camac St

Partners GP LLC, 1326 N Mascher St Partners GP LLC, Revival Management LLC, Passyunk

Loan ACQ13 LLC.

-2-

2.     On September 10, 2019, plaintiff ASAM, LLC commenced suit by Writ of Summons against the consenting defendants in the Court of Common Pleas of Philadelphia County.

3.     On February 21, 2020, co-defendant Robert Meulmeester was served with the Complaint in the lawsuit.

4.     On March 2, 2020, Robert Meulmeester filed a Notice of Removal to Federal Court.

5.     Defendants 1840 S Camac St Partners GP LLC, 1326 N Mascher St Partners GP LLC, Revival Management LLC, and Passyunk Loan ACQ13 LLC agree with the Notice of Removal and Consent to Removal of this action to Federal Court.

**WILENTZ, GOLDMAN, & SPITZER P.A.**

By:___*/s/ Daniel S. Bernheim*_____
            Daniel S. Bernheim, 3d, Esquire
            Attorneys for Defendants
            1840 S Camac St Partners GP LLC,
            1326 N Mascher St Partners GP LLC,
            Revival Management LLC and
            Passyunk Loan ACQ13 LLC

Dated: February 28, 2020

# Exhibit "D"

(Notice of Removal)

```
-----------------------------------------------------------------
ASAM, LLC                                    :
               Plaintiff,                    :      COURT OF COMMON PLEAS
                                             :      PHILADELPHIA COUNTY
v.                                           :
                                             :      SEPTEMBER TERM, 2019
JING PU, ROBERT MEULMEESTER, NANJING         :      NO. 001274
CAPITAL MANAGEMENT, LLC,                     :
1840 S CAMAC ST PARTNERS GP LLC,             :      COMMERCE PROGRAM
1326 N MASCHER ST PARTNERS GP LLC,           :
REVIVAL MANAGEMENT LLC,                      :
PASSYUNK LOAN ACQ13 LLC,                     :
EDGEWISE REALTY, LLC, and                    :
JOHN/JANE/ENTITY DOE DEFENDANTS 1-10         :
               Defendants.                   :
                                             :
-----------------------------------------------------------------
```

## DEFENDANT'S NOTICE OF CONSENT TO REMOVAL

Defendants Jing Pu and Nanjing Capital Management, LLC hereby file this consent to removal under 28 U.S.C. § 1446(b). In support of this consent, defendants state as follows:

1.     The plaintiff is ASAM, LLC and the consenting defendants are Jing Pu and Nanjing Capital Management, LLC.

2.     On September 10, 2019, plaintiff ASAM, LLC commenced suit by Writ of Summons against the consenting defendants in the Court of Common Pleas of Philadelphia County.

3.     On February 21, 2020, co-defendant Robert Meulmeester was served with the Complaint in the lawsuit.

4.     On March 2, 2020, Robert Meulmeester filed a Notice of Removal to Federal Court.

#11201872.1(170301.001)

5.     Defendants Jing Pu and Nanjing Capital Management, LLC agree with the Notice of Removal and Consent to Removal of this action to Federal Court.

THE GRANGER FIRM

BY: _____

Date: _____

Blair H. Granger, Esquire
Attorneys for Defendants Jing Pu
And Nanjing Capital Management, LLC

#11201872.1(170301.001)

# Exhibit "E"

(Notice of Removal)

-----------------------------------------------------------

ASAM, LLC

        Plaintiff,

v.

JING PU, ROBERT MEULMEESTER, NANJING
CAPITAL MANAGEMENT, LLC,
1840 S CAMAC ST PARTNERS GP LLC,
1326 N MASCHER ST PARTNERS GP LLC,
REVIVAL MANAGEMENT LLC,
PASSYUNK LOAN ACQ13 LLC,
EDGEWISE REALTY, LLC, and
JOHN/JANE/ENTITY DOE DEFENDANTS 1-10
        Defendants.

-----------------------------------------------------------

COURT OF COMMON PLEAS
PHILADELPHIA COUNTY

SEPTEMBER TERM, 2019
NO. 001274

COMMERCE PROGRAM

## <u>NOTICE OF FILING OF NOTICE OF REMOVAL</u>

TO THE PROTHONOTARY OF PHILADELPHIA COUNTY, PENNSYLANIA:

      PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1441 and 1446, Defendants hereby gives

written notice to the Court of Common Pleas of Philadelphia County, Pennsylvania, and to Plaintiff

Asam, LLC that Defendants have filed a Notice of Removal in the United States District Court for the

Eastern District of Pennsylvania, and this case has been removed to that Court. Pursuant to 28 U.S.C. §

1441, no further proceedings may be had in this Court unless and until the case is remanded. Please find

attached hereto a copy of the Notice of Removal with its Exhibits as Exhibit 1.

               KRAUT HARRIS, P.C.

               By:_____

                  David Kraut, Esquire
                  I.D. No. 17637
                  5 Valley Square
                  Suite 120
                  Blue Bell, PA  19422
                  215-542-4900
                  dkraut@krautharris.com

Dated: *March 2, 2020*